# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**MARK W. DOBRONSKI,**

    Plaintiff,

v.

**SELECTQUOTE INSURANCE
SERVICES TUAN ENGLAND
PHAM**

    Defendants.

Case No. 2:23-cv-12597-SJM-DRG

The Honorable Stephen J. Murphy
United States District Judge

The Honorable David R. Grand
United States Magistrate Judge

_____

## DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURUSANT TO FRCP 12(c) AND FRCP 56

Defendants SelectQuote Insurance Services and Tuan England Pham (collectively "Defendants"), respectfully move to dismiss Plaintiff Mark W. Dobronski's complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(c) and 56.

Pursuant to Local Rule 7.1(a), on July 15, 2024 and July 17, 2024, Defendants' counsel sent an email to Plaintiff seeking concurrence in Defendants' Motion to Dismiss. Defendants' counsel extended an invitation to Plaintiff to discuss further but, to date, Defendants' counsel has not received a response, which indicates that Plaintiff does not agree to the relief sought in Defendants' motion or to the grounds on which Defendants' motion is based.

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................. iii

QUESTIONS PRESENTED ................................................................ vii

I.     INTRODUCTION ................................................................. 1

II.    FACTUAL BACKGROUND .................................................... 4

   A.    The Parties ........................................................................4

   B.    SelectQuote and Amigos BPO's Contractual Relationship .......................7

III.   STANDARD OF REVIEW .................................................... 11

   A.    FRCP 56 ...........................................................................11

   B.    FRCP 12(c) .......................................................................12

IV.    ARGUMENT ...................................................................... 13

   A. Count I, III, VI and VII of Plaintiff's Complaint Must Be Dismissed as SelectQuote And Pham Are Not Vicariously Liable For Either Call. ...13

   B. Count I, III, VI and VII of Plaintiff's Complaint Must Be Dismissed as Dobronski Provided Prior Express Consent To Be Called. ....................20

   C. Count II, IV and V of Plaintiff's Complaint Must Be Dismissed As A Matter Of Law As There Is No Private Cause Of Action. ........................21

   D. Counts I and III of Plaintiff's Complaint related to violations of the TCPA must also be dismissed as the Phone Number is not a residential number. ...................................................................................23

   E. Count VI of Plaintiff's Complaint Related To Violations of the MTCCA Must Be Dismissed As Plaintiff Fails To State a Claim. ..........................24

i

**F. This Court Should Sanction Plaintiff For Bringing and Maintaining Claims Which He Knew Were Frivolous and For Manufacturing Lawsuits** ................................................................................................25

**CONCLUSION**..............................................................................................................28

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Alar v Mercy Mem Hosp*,
  208 Mich App 518 ....................................................................17

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................13

*Bank v. Indep. Energy Grp. LLC*,
  No. 12-CV-1369 (JG)(VMS), 2015 WL 4488070 (E.D.N.Y. July
  23, 2015) ...................................................................................24

*Barton v. LeadPoint, Inc.*,
  No. 22-35130, 2023 WL 4646103 (9th Cir. July 20, 2023) (mem.
  op.) ...........................................................................................23

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................12, 13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..................................................................11

*David v Serges*,
  373 Mich 442 ...........................................................................17

*Dobronski v. Alarm Mgmt. II, L.L.C.*,
  No. 18-11055, 2020 WL 6780267 (E.D. Mich. Nov. 18, 2020) ........................26

*Dobronski v. Family First Life, LLC*,
  No. 2:22-cv-12039, 2024 WL 575858 (E.D. Mich. Jan. 19, 2024)............*passim*

*Dobronski v. Selectquote Ins. Servs.*,
  462 F. Supp. 3d 784 790 (E.D. Mich. 2020) ....................................22

*Dobronski v. SunPath Ltd.*,
  No. 19-13094, 2020 WL 8840311 (E.D. Mich July 20, 2020)...........................22

*Dobronski v. Total Ins. Brokers, LLC*,
 No. 21-10035, 2021 WL 4338957 (E.D. Mich. May 14, 2021) ........................22

*Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*,
 69 F.3d 98 (6th Cir. 1995) ................................................................................11

*Fritz v. Charter Tp. of Comstock*,
 592 F.3d 718 (6th Cir. 2010) .............................................................................12

*Hamilton v. Voxeo Corp.*,
 Nos. 3:07-cv-404, 3:08-cv-279, 2009 WL 1868542 (S.D. Ohio
 June 25, 2009) ...................................................................................................22

*Hertz Corp v Volvo Truck Corp*,
 210 Mich App 243 .............................................................................................17

*Hill v. Homeward Residential, Inc.*,
 799 F.3d 544 (6th Cir. 2015) .............................................................................21

*Lillard v. Shelby County Bd. of Educ.*,
 76 F.3d 716 (6th Cir. 1996) ...............................................................................13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986).............................................................................................12

*Merritt v. Int'l Ass'n of Machinists and Aerospace Workers*,
 613 F.3d 609 (6th Cir. 2010) .............................................................................27

*Mitchell v. Toledo Hosp.*,
 964 F.2d 577 (6th Cir. 1992) .............................................................................12

*Moran v. Al Basit LLC*,
 788 F.3d 201 (6th Cir. 2015) .............................................................................12

*Orlett v. Cincinnati Microwave, Inc.*,
 954 F.2d 414 (6th Cir. 1992) .......................................................................25, 27

*Persinger v Holst*,
 248 Mich App 499 .............................................................................................17

*Runfola & Ass., Inc. v. Spectrum Reporting II, Inc.*,
 88 F.3d 368 (6th Cir. 1996) ...............................................................................27

*Shelton v. Target Advance LLC*,
  No. 18-2070, 2019 WL 1641353 (E.D. Pa. Apr. 16, 2019) ...............................23

*Simmons v. Charter Commc'ns, Inc.*,
  222 F. Supp. 3d 121 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d
  Cir. 2017) ............................................................................................................22

*Tahfs v. Proctor*,
  316 F.3d 584 (6th Cir. 2003) ............................................................................26

*In re Triple S Restaurants, Inc.*,
  519 F.3d 575 (6th Cir. 2008) ............................................................................26

*Union Planters Bank v. L & J Dev. Co.*,
  115 F.3d 378 (6th Cir. 1997) ............................................................................26

**Statutes**

47 U.S.C. § 227(b)(2) ...........................................................................................20

47 U.S.C § 227(b)(1)(A) ...............................................................................3,19,20

MCL 445.111(m)(i) ...............................................................................................20

MCL 445.111a(5) .....................................................................................................4

MCL 484.125(2)(a) .................................................................................3, 20, 24, 25

MCL 484.125(2)(b) ...........................................................................................4, 24

TCPA ............................................................................................................*passim*

**Other Authorities**

47 C.F.R. § 64.1200(d) ...................................................................................3, 21, 22

47 C.F.R. § 64.1601(e) ............................................................................................3, 22

47 C.F.R § 64.1200(a) ..............................................................................................3, 19

47 C.F.R § 64.1200(c)(2) .............................................................................................3

1991, 7 F.C.C. Rcd. 8752 (1992) .............................................................................20

Fed. R. Civ. P 11 ...........................................................................22, 25, 26, 27

Fed. R. Civ. P. 12(b)(6)............................................................................................12

Fed. R. Civ. P. 12(c)...............................................................................................12

Fed. R. Civ. P. 56 ...................................................................................................11

## QUESTIONS PRESENTED

1. Whether Counts I, III, VI and VII of Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 56 as Plaintiff cannot establish that either Defendants are vicariously liable for the placement of the calls?

   Plaintiff Says: No
   Defendants Say: Yes.

2. Whether Counts I, III, VI and VII of Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 56 as Dobronski provided the requisite prior express consent to be called?

   Plaintiff Says: No
   Defendants Say: Yes.

3. Whether Counts II, IV and V of Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(c) because there is no private cause of action for these claims?

   Plaintiff Says: No
   Defendants Say: Yes.

4. Whether Counts I and III of Plaintiff's Complaint should also be dismissed pursuant to Fed. R. Civ. P. 56 as the Phone Number is not a residential number?

   Plaintiff Says: No
   Defendants Say: Yes.

5. Whether Count VI of Plaintiff's Complaint should also be dismissed pursuant to Fed. R. Civ. P. 56 as Plaintiff cannot establish that the calls were "intra state" calls or that the calls were for the purpose of providing a "recorded message"?

   Plaintiff Says: No
   Defendants Say: Yes.

6. Whether this Court should sanction Plaintiff pursuant to Fed. R. Civ. P. 11 for brining and maintain claims he knew were not supported by law and for manufacturing lawsuits?

   Plaintiff Says: No
   Defendants Say: Yes.

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## I.      Introduction

Mark Dobronski ("Dobronski") is a professional *pro se* litigant who has made a business out of suing companies for violating the Telephone Consumer Protection Act, 47 U.S.C. 227, *et seq*., ("TCPA"), earning more than $500,000 from his lawsuits in 2023. **Exhibit 1,** *Dobronski Dep. Transcript,* at 11:15-26. In the Eastern District of Michigan alone, Dobronski has filed over 40 TCPA lawsuits (three against Defendant, SelectQuote Insurance Services ("SelectQuote")), using multiple phone numbers and what other courts have recognized as "sophisticated telephone answering and recording equipment." *Dobronski v. Family First Life, LLC*, No. 2:22-cv-12039, 2024 WL 575858, at *7 (E.D. Mich. Jan. 19, 2024).

As part of his TCPA lawsuit business, Dobronski manufactures calls by filling out lead generation forms requesting calls from various affiliate marketing websites under a pseudonym. When an affiliate marketing company then calls Dobronski pursuant to that request he then utilizes what he calls a "canary trap," whereby Dobronski feigns interest in a product and provides callers with false names and personal information. This practice typically triggers the call to be transferred to the merchant, whose products or services are being marketed. The call would never be transferred to the merchant but for Dobronski's feigned interest in the marketed product. Dobronski, once transferred to the merchant, asks the merchant to identify

itself (he does not ask this question of the affiliate marketing company), then proceeds to threaten the merchant with litigation based upon his number allegedly being on the Do Not Call List, and then files his lawsuit seeking statutory damages against the merchant (and its employee). Dobronski, recognizing the cost of litigation, then extorts a settlement out of the merchant who did not initiate the call and would never have been connected with him but for Dobronski's deceptive practices.

In this particular lawsuit, Dobronski alleges he received two calls to phone number 734-648-2951 (the "Phone Number"). Compl. at ¶¶ 80-93. One call from the affiliate marketing company in response to the lead generation page Dobronski completed and one call dialed by the SelectQuote representative after the initial call was disconnected. The Phone Number is utilized on the mobile phone of Dobronski's daughter that he provides in exchange for her working at his company and is a business number given to Dobronski's company in exchange for T-Mobile (formerly Sprint) maintaining a cell tower on his property. Ex. 1, *Dobronski Dep. Tr.* at 81:13-82:2.

Mr. Dobronski's complaint seeks $16,000 in statutory damages and includes the below claims against SelectQuote and Tuan England Pham ("Pham") related to the two calls. As outlined below, several of Dobronski's claims must be dismissed as a matter of law and the remaining ones, Defendants have direct defenses to:

| Count | Claim | Reason For Dismissal |
|---|---|---|
| I | Violation of the TCPA – Automated Call 47 USC 227(b)(1)(A)(iii) and 47 CFR 64.1200(a)(1)(iii) ($500 per call and Plaintiff seeks treble damages) | As SelectQuote did not make Call 1, and there is no vicarious liability for Call 1, this claim must be dismissed.  In addition, Dobronski provided express consent for both calls and the Phone Number does not qualify as a residential Phone Number under the TCPA. |
| II | Violation of the TCPA – Semi Abandoned Call 47 CFR 64.1200(a)(7)(i) ($500 per call and Plaintiff seeks treble damages) | This is not a recognized claim. See Family First, 2024 WL 575858, at *15 (finding no liability for abandoned calls) |
| III | Violation of the TCPA – Do Not Call Violation 47 CFR 64.1200(c)(2) ($500 per call and Plaintiff seeks treble damages) | As SelectQuote did not make Call 1, and there is no vicarious liability for Call 1, this claim must be dismissed.  In addition, Dobronski provided express consent for both calls and the Phone Number does not qualify as a residential Phone Number under the TCPA. |
| IV | Violation of the TCPA – Failure to Supply Policy 47 CFR 64.1200(d)(1) ($500 per call and Plaintiff seeks treble damages) | This is not a recognized claim. See Family First, 2024 WL 575858, at *17-18 (finding no liability for telemarketer's refusal to send the plaintiff its do-not-call policy under 47 C.F.R. § 64.1200(d) |
| V | Violation of the TCPA – Bad Caller ID 47 CFR 64.1601(e) ($500 per call and Plaintiff seeks treble damages) | This is not a recognized claim. See Family First, 2024 WL 575858, at *18-19 (finding that this section of the TCPA does not create a private cause of action). |
| VI | Violation of the MTCCCA MCL 484.125(2)(a) and or (2)(b) ($500 per call and Plaintiff seeks treble damages) | The calls alleged in Plaintiff's complaint do not have a recorded message as required to fall within MCL 484.125(2)(a) and are not "intrastate |

| | | |
|---|---|---|
| | | calls" as required by MCL 484.125(2)(b) and, therefore, must be dismissed. In addition, Plaintiff provided express consent for both calls |
| VII | Violation of the MHSSA MCL 445.111a(5) ($500 per call and Plaintiff seeks treble damages) | As SelectQuote did not make Call 1, and there is no vicarious liability for Call 1, this claim must be dismissed. In addition, Dobronski provided express consent for both calls. |
| | **Total Damages Sought: $16,000.00** | |

## II.   FACTUAL BACKGROUND

A. The Parties

      *1.   Mark Dobronski*

Dobronski is a professional serial plaintiff that has created a cottage industry out of manufacturing telephone calls and then suing companies claiming that they violated the TCPA and various state laws because his number is on the "Do Not Call Registry." In fact, through his TCPA lawsuit business, Dobronski earned over $500,000 in 2023 and approximately $100,000 in 2022 from TCPA lawsuits. Ex. 1, *Dobronski Dep. Tr.,* at 11:8-9. At least a third of Dobronski's income is from his TCPA claims. *Id.* at 11:2-3. This is not surprising given the sheer amount of litigation Dobronski is involved in - Dobronski has filed over 100 cases in Michigan federal and state courts. *Id.* at 22:24-23:2. And, he is prepared to file approximately 50 more claims in the Florida courts in the coming months. *Id.* at 23:11-19.

To create these lawsuits, Dobronski has at least eight lines that he uses for his TCPA claims. *Id.* at 138:11-23. Mr. Dobronski also has an additional six to seven active business lines held by his company, Teletech, Inc., and provided by T-Mobile for no charge, along with mobile phones for each line, in exchange for T-Mobile maintaining a cell tower on Dobronski's (or his company's) property. *Id.* at 81:13-83:2.

The Phone Number at issue is one of these six lines belonging to Teletech, Inc. *Id.* at 74:15-75:3. The Phone Number is assigned to a mobile phone that Dobronski's daughter primarily uses and is considered her phone. *Id.* Dobronski's company, Teletech, Inc., provides the phone and Phone Number to Dobronski's daughter for business purposes and in exchange for her employment with Teletech, Inc. *Id.* at 20:12-16; 154:1-21. The Phone Number is not Dobronski's primary phone number, instead 734-330-9671 is his primary phone number. *Id.* at 16:21-17:5. Contrary to Dobronski's allegations in his Complaint, he is not the primary user of the Phone Number. *Id.* at 154:1-21; *See also,* Compl. ¶¶40 and 43.

Dobronski in the last four years has sued SelectQuote two other times in addition to the instant action. The cases were all pending in this District Court under the following case numbers: 19-12798 (Hon. David M. Lawson) and 22-10798 (Hon. Terrence G. Berg). In each of these lawsuits, despite Dobronski requesting the calls just as he did here, SelectQuote settled with a payment to Dobronski to avoid the

costs of litigation. It is apparent that Dobronski views SelectQuote as well of unending patience and funds for him.

### 2.    *SelectQuote*

SelectQuote is a non-captive insurance agent selling home, health and life insurance. **Exhibit 2,** *Declaration of Jeff Randolph* at ¶3. SelectQuote does not engage in cold calling and does not purchase or create contact lists. *Id.* at *¶¶*4-11. SelectQuote only contacts individuals that have requested, in writing, a call for more information about its products and services, or that are connected to it through an affiliate marketer that received a request through a lead generation form on a website for a call regarding home, health and life insurance. *Id.*

### 3.    *Amigos BPO*

Amigos BPO is an affiliate marketing company. **Exhibit 3,** *Amigos Dec.* at ¶3. Amigos BPO owns and operates websites with lead generation forms for insurance products and services. *Id.* at ¶4-5. Consumers visit Amigos BPO's website seeking insurance services and submit their contact information through the lead generation forms. The lead generation form states, "Get a Plan Review, Submit your Phone & a licensed sales agent will reach you Right away. (sic.)" **Exhibit 4,** *Lead Generation Form.* The lead form is for different types of insurance, and the consumer selects through a drop down box the insurance s/he is interested in. *Id.* Amigos BPO is an affiliate marketer for 2,098 different insurance companies and

agents, which include companies like AAA, AARP, AFLAC, Chubb, GMAC, Liberty Mutual, Nationwide, Prudential, State Farm, etc. Ex. 3, at ¶6; *See* https://yourtopinsurance.com/marketing-partners/.   The lead form is used for thousands of insurance companies that Amigos BPO is an affiliate marketer for and is not controlled by SelectQuote. Ex. 2, *Randolph Dec.* at ¶7. The submission of the lead form is a clear and unequivocal request for a telephone call by Amigos BPO to discuss the consumer's insurance needs. This is also made clear through Amigos BPO's privacy policy. **Exhibit 5,** *Privacy Policy.*

### 4. Tuan Pham

Defendant, Tuan Pham ("Pham") is an employee of SelectQuote. **Exhibit 6,** *Tuan Pham Dec.* at ¶3. Pham is a licensed insurance agent in Michigan located in California. *Id.* at ¶2. When affiliate marketing companies connect with consumers interested in SelectQuote's products and services, he is one of the SelectQuote insurance agents that consumers are connected with for purposes of learning more about their insurance options and purchasing insurance. Pham does not initiate or make any calls, except where a call is disconnected, in which case he calls the consumer back on the telephone number provided.

### B.   SelectQuote and Amigos BPO's Contractual Relationship.

On or about July 16, 2021, SelectQuote entered into a Master Services Agreement for Marketing Services with Amigos BPO ("MSA"). **Exhibit 7,** MSA.

The MSA provides, among other things, that:

i)    Amigos BPO is prohibited from conducting any marketing in violation of applicable state and federal law, specifically identifying the TCPA. *Sections 5.b.* and *6*;

ii)   Amigos BPO warrants that all consumer telephone numbers were provided to it with express prior written consent (or via e-signature) acknowledging he/she authorized  consent for Amigos BPO to call any telephone number or mobile phone numbers submitted for the purpose of providing insurance quotes or connecting the consumer with SelectQuote. *Section 7*; and

iii)  Amigos BPO will indemnify SelectQuote for any breach of the MSA or warranty. *Section 9.c.*

C.    <u>Dobronski fills out a lead form requesting a call from Amigos BPO</u>.

On July 3, 2023 at approximately 1:01 pm ET/12:01 pm CT, a Lead Form was submitted to Amigos BPO. The Lead Form was filled out and included both the Phone Number and Dobronski's pseudonym "Carlton Fisher" as the person requesting a call for information regarding SelectQuote's products (the "Call Request"). Ex. 3, *Amigos Dec.* at  ¶14. To submit the Lead Form, Dobronski or his agent agreed to consent language, which stated, in relevant part:

> By checking this box and selecting "Submit," I agree to the Privacy Policy and Terms & Conditions. I further give expressed written consent via this chat/web form to receive marketing communications regarding insurance products and services including Medicare Supplement, Medicare Advantage and Prescription Drug Plans and other health-related services via live automated telephone dialing system telephone call, text or email…I understand this request has been initiated by me and is an unscheduled contact request and one or more of it's marketing partners or its Licensed Insurance agents at the phone number and/or

e-mail address provided to us, including wireless numbers, if applicable, even if I have previously registered the provided number on the Do Not Call Registry. [*Id.* at ¶15].

The information entered in the Lead Form was submitted to Amigos BPO and captured in an unalterable message to Amigos BPO's systems. The content of the Lead Form and the date it was submitted are unequivocally established by the following videos and screenshot:

| | |
|---|---|
| **Ex. 8,**<br><br>**Video 1** | This is a video of Amigo BPO's administrative panel for its internal lead data base, which integrates with data from the Jornaya platform. It shows Amigos BPO logging into its account, pasting into the search the Jornaya lead identification number for the record search. The record search shows the time and date of the submission of the Lead Form, specifically identifying that the Phone Number and the name "Carlton Fisher" were entered on the Lead Form on July 3, 2023 at 1:01:06 PM. Jornaya is a service that captures data being entered on a lead generation form in real time. Jornaya is used by telemarketers for creating an audit trail for purposes of ensuring TCPA compliance. The video establishes that |
| **Ex. 9,**<br><br>**Video 2** | When a lead generation form is submitted, the information submitted through the form is emailed to Amigos BPO's Gmail account in an Excel file. This video shows a representative of Amigos BPO opening up an email from July 3, 2023, accessing the attached Excel file, which demonstrates that the Phone Number was submitted through the Lead Form and the date it was submitted. The video clearly shows that the Phone Number was submitted prior to any call to Dobronski a/k/a Carlton Fisher. |
| **Exhibit 10,**<br><br>**Lead ID** | This image is a screenshot of the Excel spreadsheet identifying the UniversalLeadID, which is the same number in the two videos. The screenshot shows that the Phone Number and Name Carlton Fisher were submitted through the Lead Form on July 3, 2023. |

A declaration from Amigos BPO, attached as Exhibit 3 identifies the videos and clearly explains how they each support that the Lead Form was submitted on July 3,

2023, with the Phone Number and the name "Carlton Fisher" prior to any call being made to Dobronski. Ex. 3, Amigos Dec. at ¶¶20-26.

Based upon the Call Request, on August 10, 2023 a call was made by Amigos BPO to the Phone Number ("Call 1"). *Id.* at ¶17. Upon answering the phone, Amigos BPO asked for Dobronski's name to which he responded "Carlton Fisher." Ex. 1, *Dobronski Dep. Tr.* At 41:12-42:3; **Exhibit 11,** *Audio Recording 1.* Amigos BPO, as evidenced above, did not volunteer this name, instead, Dobronski provided it to Amigos BPO about a month *after* the submission of the Lead Form; thus, evidencing that Dobronski input the information into YourTopInsurance.com on July 3, 2024.

Dobronski claims that he made up the name "Carlton Fisher" when he received the telephone call from Amigos BPO. Ex. 1, *Dobronski Dep. Tr. at* 41:12-42:3. Dobronski claims he thought of the name because it was on or around the same date that a "Mr. Fisher" from Publishers Clearinghouse called him to inform him that he won $20.5 million and a new Mercedes Benz. *Id.* at 171:2-172:1. He claims he came up with the first name "Carlton" based upon the tv show, "Rhoda." *Id.* at 172:2-10.

Dobronski contends that he did not fill out the Request Form and that the person that filled out the Request Form was either "clairvoyant" or the form was filled out after the call was made. *Id.* at 45:3-46:9. Dobronski, however, admits he has no proof of either. *Id.* at 48:23-49:4.

After responding several qualifying questions by an Amigos BPO representative, Dobronski was transferred to Defendant Pham where Dobronski and Pham commenced their conversation until the call was ultimately disconnected for some reason. *Id.* At 54:11-15. Dobronski allegedly attempted to call back to make a "Do Not Call Demand," although he has no proof of doing so. Compl. at ¶85;*Id.* At 157:17-158:3.

Pham then called Mr. Dobronski back ("Call 2") and, instead of making a do not call demand at that time, Mr. Dobronski conferred with Pham for several minutes, pretending to be interested in the insurance product, before abruptly shifting his demeanor and berating Mr. Pham for violating the TCPA for the remainder of the call. **Exhibit 12**, *Audio Recording 2.* Shortly thereafter, Mr. Dobronski filed this instant lawsuit.

## III.   STANDARD OF REVIEW

### A. FRCP 56

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party bears the initial burden of presentation that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no requirement, however, that the moving party "support its motion with [evidence] negating the opponent's claim." *Id.*; *see also Emp'rs  Ins.  of Wausau v.  Petrol.*

11

*Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995).

Second, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quoting Fed. R. Civ. P. 56(e)). This requires more than a "mere existence of a scintilla of evidence" or " '[t]he mere possibility of a factual dispute.' " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). For a court to deny summary judgment, "the evidence [must be] such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. All reasonable inferences from the underlying facts must be drawn "in the light most favorable to the party opposing the motion." *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

### B. FRCP 12(c)

The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

A motion to dismiss tests the legal sufficiency of the plaintiff's complaint. To survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,

570 (2007). Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

Although the Court must accept all well-pleaded factual allegations as true for purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Thus, to avoid dismissal, "a complaint must contain sufficient factual matter," accepted as true, to state a claim for relief that is plausible on its face. *Id.* at 678. In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

## IV. ARGUMENT

### A. Count I, III, VI and VII of Plaintiff's Complaint Must Be Dismissed as SelectQuote And Pham Are Not Vicariously Liable For Either Call.

#### 1. SelectQuote and Pham  are not vicariously liable for the alleged violations of the TCPA of Amigos BPO related to Call 1.

The issue of vicarious liability for a party similarly situated to SelectQuote has already been litigated by Dobronski in the state courts of Michigan and the Michigan Court of Appeals ruled against him, upholding the dismissal of his TCPA

and MHSSA claims. See *NPS, Inc. and Ensurety Ventures, LLC d/b/a Omega Auto Care,* 2022 WL 1194212 (MI Ct. of Appeals, 2022). *See* **Exhibit 13**, (NPS Opinion"). "Call 1" was made by Amigos BPO. If Dobronski is correct that Call 1 violated applicable law, the call was made in violation of the MSA; thus, outside of the scope of Amigos BPO's relationship with SelectQuote, and SelectQuote cannot be vicariously liable for such conduct. The NPS Opinion makes this point clear in its analysis of Dobronski's TCPA and MHSSA claims.

The Defendant (Omega) in *Dobronski v NPS, Inc. and Ensurety Ventures, LLC d/b/a Omega Auto Care*, sold vehicle-service contracts through the use of intermediary call centers such as NPS. *Id.* at 1. Dobronski argued that NPS had actual or apparent authority to act on behalf of Omega or that Omega ratified NPS's alleged wrongful conduct, thus, Omega was vicariously liable for NPS's violations of the TCPA and MHSSA. The *NPS* Court, however, rejected each of these arguments and dismissed Dobronski's claims against Omega.

### a.   There was no actual authority.

The NPS Court first addressed the principal of "actual authority," stating:

> [A]n agent acts with actual authority "when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent to so act."

*Id.* at 4 (quoting, 1 Restatement Agency, 3d, §2.01). In reaching its decision, the NPS Court relied upon the agreement between Omega and NPS that prohibited NPS

from making illegal telemarketing calls, holding that:

> NPS could not have reasonably believed that it acted within the Seller-Agreement's terms when it allegedly used an automated dialing system to make an uninvited call to Dobronski at a cell phone number listed on DNC registry. See *Jones v Royal Admin Servs, Inc,* 887 F3d 443, 446 (CA 9, 2018). [*Id.*]

In reaching this holding the NPS Court rejected Dobronski's arguments that:

i) "the Seller Agreement was a sham to provide legal cover should a lawsuit arise";

and ii) "Omega's continued business relationship" with NPS despite earlier

violations of federal and state law provided evidentiary support that NPS acted with

Omega's authority. *Id.* The Court explained that in order for Dobronski's argument

to prevail, "Omega would have had to have been on notice of McCullough's alleged

unlawful activities before NPS called Dobronski." *Id.* at *5. The *NPS* Court

determined that there was no evidence to support this conclusion. *Id.*

### b.   There was no apparent authority.

The NPS Court also found there was no apparent authority to justify holding

Omega liable for NPS's violations of the TCPA or MHSSA. The NPS Court stated:

> 'Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.' 1 Restatement Agency, 3d, §203. 'The apparent power of an agent is to be determined by the act of the principal and not by the acts of the agent." *Brainard v American Skandia Life Assurance Corp,* 432 F3d 655,663 (CA 6, 2005) [*Id.* at p. 5.]

The *NPS* Court rejected Dobronski's arguments "that NPS acted with

apparent authority because Omega gave NPS access to Omega's product pricing, allowed NPS to enter consumer information into Omega's systems, and permitted NPS to display Omega's trade name on vehicle-service agreements…" *Id.* In holding there was no genuine issue of fact to support apparent authority, the *NPS* Court stated:

> Although a jury might reasonably infer from this evidence that NPS was authorized to sell Omega's product, it does not raise a question of fact regarding whether Omega authorized NPS to make illegal telemarketing calls, particularly when viewed together with the Seller Agreement, or that Omega knew, or should have known, that NPS was making illegal telemarketing calls on its behalf. [*Id.*]

### c. There was no ratification by Omega of NPS's actions.

The NPS Court also rejected Dobronski's ratification argument, where Dobronski argued that Omega's continued business dealings with NPS demonstrate that it ratifies and approves the conduct of NPS.  The NPS Court stated:

> 'Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.' 1 Restatement Agency, 3d, §4,01(2). A principal can ratify an act by '(a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents.' 1 Restatement Agency, 3d, §4,01(2). [*Id.* at *5*.]

The *NPS* Court held that although Omega entered into a call center contract with CIC Enterprises (a telemarketing company opened by the principal of NPS) after the initiation of the subject action, "it would support a forward looking inference only and does not establish that Omega ratified NPS's alleged [past] conduct  in this

case." *Id.* at \*6. Further, Omega testified at a deposition that it was not aware of any illegal marketing calls in the past by NPS. *Id.* The Court held that without that knowledge, Omega "could not have ratified NPS's actions." *Id.*

### d.    NPS Court dismisses claims against Omega.

In dismissing Dobronski's claims against Omega, the *NPS* Court concluded that "[t]here was no record evidence that Omega itself initiated any of the unlawful calls that serve as the basis for Dobrinski's complaint and there is no basis to assert that Omega is vicariously liable for NPS's allegedly unlawful telemarketing calls." *Id.* at \*7. The Court also dismissed Dobronski's claims under the MHSSA holding that "[a]gency law in Michigan mirrors federal law, and, for the same reasons [set forth under its analysis of the TCPA claims] the record does not establish that NPS had authority to make unlawful calls to Dobronski on Omega's behalf."[1] *Id.*

### e.    As Omega was not vicariously liable for NPS's conduct, neither should SelectQuote be liable for any conduct of Amigos BPO.

Pursuant to the same analysis set forth in *Dobronski v NPS,* SelectQuote cannot be vicariously liable for Amigos BPO's alleged violations of the TCPA or

---

[1] In support of its holding that Michigan agency law mirrors federal law, the *NPS* Court cited to *David v Serges*, 373 Mich 442, 443-444; 129 NW2d 882 (1964); *Persinger v Holst*, 248 Mich App 499, 505; 639 NW2d 594 (2001); *Hertz Corp v Volvo Truck Corp*, 210 Mich App 243, 246; 533 NW2d 15 (1995); *Alar v Mercy Mem Hosp*, 208 Mich App 518, 528; 529 NW2d 318 (1995).

MHSSA for Call 1. To the extent that Dobronski actually suffered any damages (he did not) and that Call 1 violated applicable law (it did not), his purported damages were solely caused by Amigos BPO, a third party over whom SelectQuote had no control over. It is indisputable that the call identified as "Call 1" in the Complaint was made by Amigos BPO. Further, it is indisputable that Amigos BPO was strictly prohibited in Sections 5(b), 6 and 7 of the MSA from engaging in telemarketing that violated the TCPA or applicable law. Ex. 7. In fact, in Section 10(b), Amigos BPO is required to indemnify SelectQuote from any claims related to its engagement in telemarketing activities in violation of the TCPA and applicable law.

Further, Dobronski testified that he had no evidence that SelectQuote specifically instructed Amigos BPO to make calls, specifically Call 1, in violation of the TCPA or any other law. Ex. 1, *Dobronski Dep. Tr.* At 107:14-19; 107:23-108:2.  He also testified that the only conduct that he is aware of that would support his claim that SelectQuote authorized Amigos BPO was based upon conduct following the placement of Call 1, not conduct prior to the placement of Call 1. *Id.* There is no evidence that SelectQuote was aware of Amigos BPO conducting telemarketing activities in violation of the TCPA or any other law prior to the placement of Call 1. *Id.* In fact, SelectQuote had no knowledge that Amigos BPO was doing anything in violation of the TCPA or applicable law prior to the placing of Call 1. Ex. 2, *Randolph Dec.* at ¶¶9-11.

Based upon these indisputable facts, there is no basis to support that Amigos BPO was authorized, under either principles of actual or apparent authority, to engage in the alleged illegal telemarketing activities. Further, there can be no basis to assert that SelectQuote ratified Amigos BPO engaging in the alleged illegal telemarketing activities prior to the date and time of Call 1. As mentioned, SelectQuote was not aware of any illegal telemarketing activities by Amigos BPO prior to Call 1; thus, it could not and did not ratify the placing of Call 1 if done in contravention to the TCPA or applicable law.

Moreover, there is no legal basis to hold Tuan Pham, an employee of SelectQuote, without any managerial role, vicariously liable for Call 1. The evidence does not support it and no case law supports the application of vicarious liability by an employee for his/her employer's conduct or the conduct of his employer's service providers. For these reasons, all claims against SelectQuote and Tuan Pham for Call 1 should be dismissed.

2. *There is no violation of the TCPA for Call 2 as Tuan Pham manually dialed Dobronski following the disconnection of Call 1.*

Dobronski's claim against SelectQuote and Tuan Pham for Call 2 is based upon 47 USC §227(b)(1)(A)(iii) and 47 CFR §64.1200(a)(1)(iii). To violate these sections, the telephone call must be made "using any automatic telephone dialing system…" 47 USC §227(b)(1)(A); 47 CFR §64.1200(a)(1).

After Call 1 disconnected, Pham called Dobronski back by manually dialing

Dobronski's telephone number. Ex. 6, *Pham Dec.* at ¶7. Thus, there can be no violation of the TCPA. Further, Call 2 was merely a continuation of Call 1, not a new call. Dobronski's TCPA claim based upon Call 2 should therefore be dismissed.

### B.  Count I, III, VI and VII of Plaintiff's Complaint Must Be Dismissed as Dobronski Provided Prior Express Consent To Be Called.

A direct defense to any claims under the TCPA, the MTCCA, or the MHSSA is where a call was made with prior express consent. Under 47 U.S.C. § 227(b)(1)(A) the TCPA exempts those calls "made with the prior express consent of the called party". The MTCCA applies to unsolicited phone calls unless:  (*i*) The subscriber has knowingly and voluntarily requested, consented, permitted, or authorized the contact from the caller; or (*ii*) The subscriber has knowingly and voluntarily provided his or her telephone number to the caller. *See,* MCL 484.125(2)(a)(i) and (ii). Similarly, the MHSSA does not apply to telephone solicitations with a person who has given "express invitation or permission prior to the voice communication." MCL 445.111(m)(i).

The FCC - which shapes the law in this area,[2] originally defined "prior express consent" as a party who gives an "invitation or permission to be called at [a certain] number." In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 F.C.C. Rcd. 8752, 8769 (1992). The Sixth Circuit

---

[2] See 47 U.S.C. § 227(b)(2) (charging the FCC with prescribing rules and regulations under the Act)

has recognized that "a person gives his 'prior express consent' under the statute if he gives a company his number before it calls him." *Hill v. Homeward Residential, Inc.,* 799 F.3d 544, 552 (6th Cir. 2015). As outlined above, Dobronski consented to receiving Call 1 and Call 2 by inputting his information into the Lead Form to request a call and by agreeing to the consent language present on the Lead Form. That is sufficient to convey the "prior express consent" or "permission" needed under either the TCPA, the MTCCA, or the MHSSA.

### C. Count II, IV and V of Plaintiff's Complaint Must Be Dismissed As A Matter Of Law As There Is No Private Cause Of Action.

Under Count II, Dobronski argues that the subsections of § 64.1200(a)(7) create an additional cause of action and asserts liability based on (a)(7)(i), as the alleged calls were not "connected to a live sales representative within two (2) seconds of the called person's completed greeting." Ex. A, at ¶98. However, this subsection does not create a separate cause of action. *Dobronski v. Fam. First Life, LLC*, No. 2:22-CV-12039, 2024 WL 575858 (E.D. Mich. Jan. 19, 2024), *report and recommendation adopted in part, rejected in part*, No. 22-CV-12039, 2024 WL 1342668 (E.D. Mich. Mar. 29, 2024) (citing *Leyse v. Bank of Am., Nat'l Ass'n*, No. CV117128SDWSCM, 2020 WL 1227410, at *4 (D.N.J. Mar. 13, 2020), *aff'd*, 856 F. App'x 408 (3d Cir. 2021)).

Under Count IV, Dobronski asserts claims pursuant to 47 C.F.R. §§ 64.1200(d)(1), alleging a failure to have a written policy, available upon demand,

for maintaining a do-not-call list. It is not a separate violation under the TCPA for a caller's alleged failure to provide a do-not-call policy. *see Family First*, 2024 WL 575858, at *17-18(finding no liability for telemarketer's refusal to send the plaintiff its do-not-call policy under 47 C.F.R. § 64.1200(d)); *Hamilton v. Voxeo Corp.*, Nos. 3:07-cv-404, 3:08-cv-279, 2009 WL 1868542, at *4 (S.D. Ohio June 25, 2009) *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 138-39 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017). Plaintiff was well aware of this at the time of bringing this instant Complaint and, as addressed below, Defendants seek sanctions pursuant to Fed. R. Civ. P 11 as outlined in Section H, below.

Under Count V, Dobronski alleges that defendants failed to provide caller identification information as required under 47 C.F.R. § 64.1601(e)(1). Numerous judges in this district have found that this regulation does not promulgate a private cause of action. *See, e.g., Family First, 2024 WL 575858,* at *18; *Dobronski v. Total Ins. Brokers, LLC*, No. 21-10035, 2021 WL 4338957, at *7 (E.D. Mich. May 14, 2021); *Dobronski v. SunPath Ltd.*, No. 19-13094, 2020 WL 8840311, at *7 (E.D. Mich July 20, 2020); *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784 790 (E.D. Mich. 2020). Plaintiff was well aware that none of these counts created a private right of action at the time of bringing this instant Complaint and, as addressed in Section H, below Defendants are seeking sanctions for this conduct pursuant to Fed. R. Civ. P 11.

**D. Counts I and III of Plaintiff's Complaint related to violations of the TCPA must also be dismissed as the Phone Number is not a residential number.**

In addition to the above stated reasons for dismissal of Counts I and III of Plaintiff's Complaint, these claims should also be dismissed as Phone Number at issue in this case is a business number. Plaintiff testified that the Phone Number is registered to his business Teletech, Inc., and that his daughter received the telephone line because of her employment with Teletech, Inc. Ex. 1, *Dobronski Dep. Tr.* At 154:1-21.This poses a serious problem for Dobronski because "business numbers are not permitted to be registered on the National Do Not Call Registry." *Shelton v. Target Advance LLC*, No. 18-2070, 2019 WL 1641353, at *6 (E.D. Pa. Apr. 16, 2019) (citing *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 9779, 9785 (June 17, 2008) ("As the Commission has previously stated, the National Do Not Call Registry applies to 'residential subscribers' and does not preclude calls to businesses."))[3] *See also*, *e.g.*, *Barton v. LeadPoint, Inc.*, No. 22-35130, 2023 WL 4646103, at *1 (9th Cir. July 20, 2023) (mem. op.) (affirming grant of motion to dismiss where "the number that received the messages prompting this action is not a residential phone number within the

---

[3] *See also National Do Not Call Registry FAQs*, Fed. Trade Comm'n, consumer.ftc.gov/articles/national-do-not-call-registry-faqs (last accessed Apr. 4, 2024) ("The Registry is for personal phone numbers. Business phone numbers and fax lines are not covered.").

meaning of the TCPA"); *Shelton*, 2019 WL 1641353, at *6 ("[B]ecause Plaintiff held the Phone Number out to the world as a business phone number, he could not register it on the national do-not-call registry for purposes of avoiding business-to-business calls, such as those giving rise to this action."). *Bank v. Indep. Energy Grp. LLC*, No. 12-CV-1369 (JG)(VMS), 2015 WL 4488070, at *2 (E.D.N.Y. July 23, 2015) (concluding that a telephone line that is held out to the public as a business line does not constitute a residential phone number). Here, Plaintiff has clearly held out the Phone Number as a business number and not a residential phone number and, therefore, Counts I and III should be dismissed.

### E. Count VI of Plaintiff's Complaint Related To Violations of the MTCCA Must Be Dismissed As Plaintiff Fails To State a Claim.

In Count VI, Dobronski alleges that Defendants violated (i) the provision of the MTCCCA that prohibits callers from contacting telephone subscribers to deliver a recorded message for the purpose of presenting commercial advertising to the subscriber (MCL § 484.125(2)(a)) and (ii) the provision of the MTCCCA that prohibits callers from delivering "intrastate commercial advertising if the caller activates a feature to block the display of caller identification information that would otherwise be available to the subscriber" (MCL § 484.125(2)(b)).

As an initial matter, claims related to MCL 484.125(2)(b) should be dismissed as it applies only to "intrastate" calls and Plaintiff has not plausibly alleged that anyone he spoke to was calling from Michigan. Moreover, it is clear that the calls occurred

from Ohio and California, respectively. Ex. 6, Pham Dec. at ¶2. The MTCCCA

defines "[i]ntrastate" as "originating and delivering within this state." In addition,

MCL 484.125(2)(a) only applies where the caller delivered a "recorded message for

the purpose of presenting commercial advertising." There was no recorded message

in either of the telephone calls that are at issue in Plaintiff's Complaint and, as a

result, this claim should also be dismissed. Ex. 11, Audio Recording 1 and Ex. 12,

Audio Recording 2.

### F. This Court Should Sanction Plaintiff For Bringing and Maintaining Claims Which He Knew Were Frivolous and For Manufacturing Lawsuits

"By presenting to the court a pleading ... [an] unrepresented party certifies that

to the best of the person's knowledge ... [the] claims, defenses, and other legal

contentions are warranted by existing law or by a nonfrivolous argument." Fed. R.

Civ. P. 11(b)(2). An unrepresented party also certifies that "factual contentions have

evidentiary support or, if specifically so identified, will likely have evidentiary

support after a reasonable opportunity for further investigation or discovery." Fed.

R. Civ. P. 11(b)(3). Sanctions are appropriate if "the court determines that Rule

11(b) has been violated." Fed. R. Civ. P. 11(c)(1). "A sanction ... must be limited to

what suffices to deter repetition of the conduct or comparable conduct by others

similarly situated." Fed. R. Civ. P. 11(c)(4).

The decision to award Rule 11 sanctions is within the discretion of the

court. *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 419 (6th Cir. 1992). A court should consider "whether an individual's conduct was reasonable under the circumstances." *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384 (6th Cir. 1997). Courts use an objective standard of what a reasonable attorney would have done. *In re Triple S Restaurants, Inc.*, 519 F.3d 575, 579 (6th Cir. 2008). A party or attorney's good-faith belief in the merits of a case is not enough to avoid Rule 11 sanctions. *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003).

Courts consider several factors when deciding whether sanctions are warranted. These factors include "[w]hether the improper conduct was willful, or negligent; ... whether it infected the entire pleading, or only one particular count or defense; ... what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.

In deciding to issue sanctions against Plaintiff in a different case *Dobronski v. Alarm Mgmt. II, L.L.C.,* No. 18-11055, 2020 WL 6780267 (E.D. Mich. Nov. 18, 2020), this Court observed that,

> Plaintiff, while appearing *pro se*, is trained in the law. He previously served as a judge in Arizona. Plaintiff is deemed to have had the legal knowledge to be aware that his claims were unsubstantiated, and that continued litigation would impose unnecessary burdens and

costs. Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.

Plaintiff has a "continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11." *Runfola & Ass., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 374 (6th Cir. 1996) (quotations removed); *see also Merritt v. Int'l Ass'n of Machinists and Aerospace Workers*, 613 F.3d 609, 628-29 (6th Cir. 2010) (affirming Rule 11 sanctions where assertions in a complaint were factually baseless and the errors could have been discovered with reasonable inquiry). Yet, for close to a year Plaintiff has advanced allegations that are undeniably lacking in legal support, in violation of Rule 11(b)(2). Plaintiff was well aware that no private right of action existed for Counts II, IV and V as he has been repeatedly instructed on this by Courts in this district. Plaintiff disregarded those clear rulings and included these counts in order to increase his demand for damages and extort a higher settlement. These counts are not "warranted by existing law" under Rule 11(b)(2), and Plaintiff should have known it. "The principal goal of Rule 11 sanctions is deterrence." *Orlett*, 954 F.2d at 419. The Court should find that sanctions are needed to deter similar violations of Rule 11 by Plaintiff and other litigants. In addition, should this Court find that Plaintiff *did* request a call, as set forth above, Defendants additionally request sanctions on those grounds pursuant to Rule 11(b)(1) and (b)(2) as Plaintiff impermissibly manufactured, and then vigorously pursued, a lawsuit against Defendants alleging Defendants called him

without his consent when he knew that to be untrue.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant requests that the Court grant Plaintiff's

Motion to Dismiss pursuant to Fed. R. Civ. P. at 12(c) and 56 and award Defendants

their costs and fees and any such other relief as this Court deems appropriate.

Respectfully submitted,

TAFT STETTINIUS & HOLLISTER LLP.

Dated:  July 17, 2024            By:   /s/      *Kelley M. Donnelly*
                                         Jonathan Sriro (P52100)
                                         Kelley M. Donnelly (P84678)
                                         *Attorneys for Defendants*
                                         28 W. Adams Ave.
                                         Suite 1500
                                         Detroit, MI 48226
                                         Tel: (313) 800-6500
                                         Fax: (248) 351-3082
                                         jsriro@taftlaw.com
                                         kdonnelly@taftlaw.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MARK W. DOBRONSKI,**                    Case No. 2:23-cv-12597-SJM-DRG

     Plaintiff,                                         The Honorable Stephen J. Murphy
                                                         United States District Judge

v.
                                                         The Honorable David R. Grand
**SELECTQUOTE INSURANCE**              United States Magistrate Judge
**SERVICES,** *et al.,*

     Defendants.

---

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2024, I caused a copy of the foregoing Defendants' Motion to Dismiss and this Certificate of Service to be mailed to Plaintiff's address at P.O. Box 222, Dexter, Michigan, 48130 and to be electronically filed with the U.S. District Court, Eastern District of Michigan, and notice will be sent by operation of the Court's electronic filing system to all ECF participants.

                         /s/__*Kelley M. Donnelly*___
                         Kelley M. Donnelly (P84678)