# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MARK W. DOBRONSKI**,

      Plaintiff,

v.

**SELECTQUOTE INSURANCE SERVICES** and
**TUAN ENGLAND PHAM**,

      Defendants.

Case No. **2:23-cv-12597-SJM-DRG**

The Honorable Steven J. Murphy
United States District Judge

The Honorable David R. Grand
United States Magistrate Judge

_____

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FRCP 12(c) AND FRCP 56 [ECF No. 33]

Plaintiff, Mark W. Dobronski, appearing *in propria persona*, hereby responds in opposition to Defendants' Joint Motion to Dismiss Plaintiff's Complaint Pursuant to FRCP 12(c) and FRCP 56, and respectfully shows:

Defendants have manufactured false evidence and presented it to the Court.

For the foregoing reasons, and for the additional reasons as elaborated in the attached brief, Defendants' Motion to Dismiss should denied.

Respectfully submitted,

Date: August 7, 2024

_____

Mark W. Dobronski
Post Office Box 222
Dexter, Michigan 48130-0222
(734) 641-2300
markdobronski@yahoo.com
Plaintiff *In Propria Persona*

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES                                                          6

QUESTIONS PRESENTED                                                          11

I.      INTRODUCTION                                                         12

        A.      Procedural Background.                                       12

        B.      Preliminary Matters.                                         12

                i.      Defendants failed to comply with the requirements of
                        E.D. Mich. Local Rule 7.1(a)                         12

                ii.     Defendants did not serve a copy of the Motion
                        upon Plaintiff.                                      14

II.     FACTUAL BACKGROUND                                                   17

        A.      The Claims.                                                  17

        B.      The Calls.                                                   19

        C.      The Affiliate Marketer.                                      20

                i.      Contempt by Amigos BPO LLC.                          20

        D.      The Lead Form.                                               21

        E.      The Audio Recording of Call 1.                               28

III.    STANDARD OF REVIEW                                                   29

        A.      Fed. R. Civ. P. 56                                          29

        B.      Fed. R. Civ. P. 12(c)                                        30

IV.     ARGUMENT                                                             29

A.   Whether Counts I, III, VI, and VII of Plaintiff's Complaint
     Must Be Dismissed as Defendants Are Not Vicariously
     Liable for Either Call.                                              31

     i.    Whether Defendants are vicariously liable for
           the alleged violations of the TCPA of Amigos
           BPO related to Call 1.                                         31

     ii.   Whether there is no violation of the TCPA for
           Call 2 as Pham manually dialed Plaintiff after
           the disconnection of Call 1.                                   37

B.   Whether Count I, III, VI, and VII of Plaintiff's Complaint
     Must Be Dismissed as Plaintiff Provided Prior Express
     Consent To Be Called.                                               38

C.   Count II, IV, and V of Plaintiff's Complaint Must Be
     Dismissed As a Matter of Law As There is Not Private
     Cause of Action.                                                    39

     i.    Count II - 47 C.F.R. § 64.1200(a)(7)(i).                       39

     ii.   Count IV - 47 C.F.R. § 64.1200(d)(1).                         39

     iii.  Count V - 47 C.F.R. § 64.1601(e).                            40

D.   Whether Counts I and III of Plaintiff's Complaint related to
     violations of the TCPA must also be dismissed as the Phone
     Number is not a residential number.                                 42

E.   Whether Count VI of Plaintiff's Complaint Related to
     Violations of the MTCCCA Must Be Dismissed As Plaintiff
     Fails to State a Claim.                                             45

F.   Whether the Court Should Sanction Plaintiff for Bringing
     and Maintaining Claims Which He Knew Were Frivolous
     and for Manufacturing Lawsuits.                                     46

CONCLUSION                                                                47

# INDEX OF AUTHORITIES

*Abramson v. Oasis Power LLC*, No. 2:18-CV-00479, 2018 WL 4101857
    (W.D. Pa. 2018)     47

*American Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410 (U.S. 2011)     40

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)     30

*Anthony v. Pro Custom Solar, LLC*, 2022 WL 1634870 (C.D.Cal., 2022)     37

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)     30

*Bank v. Indep. Energy Grp. LLC*, No. 12-cv-1369, 2014 WL 4954618
    (E.D.N.Y. 2014)     45

*Bey v. Ally Bank*, Civ. Action. No. 1:21-01079, 2021 WL 4891602
    (W.D. Tenn. 2021)     16

*Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748
    (N.D.Ill. 2012)     35

*Blevins v. Premium Merch. Funding One, LLC*, No. 2:18-cv-377,
    2018 WL 5303973 (S.D. Ohio 2018)     44

*Bryce v. Commissioner of Social Security*, 2013 WL 12123666
    (E.D. Mich. 2013)     14

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016)     32

*Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010)     41

*Chennette v. Porch.Com, Inc.*, 50 F.4th 1217 (9th Cir. 2022)     44

*Ciminillo v. Streicher*, 434 F.3d 461 (6th Cir. 2006)     30

*Civil Aeronautics Bd. v. Modern Air Transp., Inc.*, 179 F.2d 622
    (2d Cir.1950)     42

*Clements v. Porch.com, Inc.*, No. 1:20-cv-00003-SLG, 2020 WL 5739591
    (D. Alaska 2020)      44

*Dobronski v. Selectquote Insurance Services*, 462 F.Supp.3d 784
    (E.D.Mich., 2020)      40

*Ellis v. Tribune Television Co.*, 443 F.3d 71 (2d Cir.2006)      42

*Far E. Conference v. United States*, 342 U.S. 570 (1952)      42

*FTC v. Verity Int'l, Ltd.*, 443 F.3d 48 (2d Cir.2006)      42

*Golden Star Wholesale, Inc. v. ZB Importing, Inc.*, 531 F.Supp.3d 1231
    (E.D.Mich., 2021)      40

*Gomez v. Campbell-Ewald Co.,* 768 F.3d 871 (9th Cir. 2014)      32

*Griffin v. Kyle*, No. 2:10-cv-664, 2011 WL 2885007 (S.D. Ohio 2011)      16

*Hasbro, Inc. v. Serafino*, 168 F.R.D. 99 (D. Mass. 1996).      14

*Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009)      30

*Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243 (4th Cir. 2018)      34

*JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577 (6th Cir. 2007)      30

*Kane v. National Action Financial Services, Inc.*, 2011 WL 6018403
    (E.D.Mich.,2011)      18

*Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316 (3rd Cir. 2015)      19

*Leyse v. Bank of America*, 2016 WL 5928683 (D.NJ 2016)      39

*Mattson v. New Penn Fin., LLC*, No. 3:18-cv-00990-YY, 2020 WL 6270907
    (D. Or. 2020)      44

*Mauer v. Am. Intercontinental Univ., Inc.*, 2016 WL 4651395
    (N.D. Ill. 2016)      31, 34

*McZeal v. Deutsche Bank Nat'l Tr. Co.*, No. A-16-CA-0430,
    2016 WL 4154846 (W.D. Tex. 2016)                                     18

*Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006)      47

*Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*,
    640 F.3d 716 (6th Cir. 2011)                                         29

*Pullins v. Eldridge*, No. 1:20-cv-01311, 2021 WL 3860298 (S.D. Ind. 2021)    16

*Robinson v. Serra Chevrolet Buick GMC of Nashville*, 2022 WL 3586210
    (M.D.Tenn. 2022)                                                     17

*Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308 (D. Mass. 2020)    43

*Samataro v. Keller Williams Realty, Inc.*, 2021 WL 4927422 (W.D.Tex., 2021)    46

*Schweitzer v. Direct Energy, L.P.*, 2021 WL 5298989 (E.D. Pa. 2021)    39

*Smith v. Truman Rd. Dev., LLC*, No. 4:18-cv-00670-NKL, 2020 WL 2044730
    (W.D. Mo. 2020)                                                      44

*Southern Railway Co. v. Foote Mineral Co.*, 384 F.2d 224 (6th Cir. 1967)    31

*Taylor v. City of Saginaw*, 922 F.3d 328 (6th Cir. 2019)               31

*Thomas v. Taco Bell Corp.*, 582 F. App'x 678 (9th Cir. 2014)          34

*Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545 (6th Cir. 2008)    30

*U.S. v. Brand Jewelers, Inc.*, 318 F.Supp. 1293 (D.C.N.Y. 1970)        15

*U.S. v. Deckard*, 816 F.2d 426 (8th Cir.1987)                          46

*U.S. v. Dish Network LLC*, 75 F.Supp.3d 916 (C.D.Ill., 2014)           18

*U.S. v. Radio Corp. of Am.*, 358 U.S. 334 (1959)                       42

*U.S. v. Ramesh*, 2009 WL 817549 (E.D.Mich.,2009)    14

*U.S. v. Western Pacific Railroad Co.*, 352 U.S. 59 (1956)    41, 42

*Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*,
    401 F.3d 876 (8th Cir. 2005)    47

*Walker v. Shermeta, Adams, Von Allmen, PC*, 623 Fed.Appx. 764
    (6th Cir. 2015)    31

*Ward v. Mgmt. Analysis Co. Emp. Disability Benefit Plan*, 135 F.3d 1276
    (9th Cir. 1988)    34

*Worsham v. LifeStation, Inc.*, No. 661, Sept. 2020 Term, 2021 WL 5358876
    (Md. Ct. Spec. App.,  2021)    41


*In re Dish Network, LLC*, 28 FCC Rcd. 6574 (2013)    32, 33, 36

*In re Rules and Regulations Implementing the TCPA*,
    10 FCC Rcd. 12391 (1995)    36

*In re State Farm Mutual Automobile Insurance Company*,
    20 FCC Rcd. 13664 (2005)    34

47 U.S.C. § 227(b)(1)(A)(iii)    18

47 U.S.C. § 227(c)(3)    18

47 C.F.R. § 64.1200(a)(1)(iii)    38

47 C.F.R. § 64.1200(a)(2)    18

47 C.F.R. § 64.1200(c)(2)    18

47 C.F.R. § 64.1200(d)(1)    39

47 C.F.R. § 64.1200(e)    18

M.C.L. § 445.111b(1)                                         18

M.C.L. § 484.125(2)(b)                                       18


Fed. R. Civ. P. 5(a)(1)                                      16

Fed. R. Civ. P. 56(a)                                        29


E.D. Mich. L.R. 9(e)                                         16


Restatement (Third) of Agency, § 2.03                        37

## QUESTIONS PRESENTED

1.  Whether Defendants' Motion should be denied for Defendants' failure to comply with the mandatory meet and confer requirement of E.D. Mich. Local Rule 7.1(a)?

2.  Whether Defendants' Motion should be denied for Defendants' sewer service of the Motion?

3.  Whether Counts I, III, VI, and VII of Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 5 as Plaintiff cannot establish that either Defendants are vicariously liable for the placement of the calls?

4.  Whether Counts I, III, VI, and VII of Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 56 as Plaintiff provided the request prior express consent to be called?

5.  Whether Counts II, IV, and V of Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(c) because there is no private cause of action for these claims?

6.  Whether Counts I and III of Plaintiff's Complaint should also be dismissed pursuant to Fed. R. Civ. P. 45 as the Phone Number is not a residential number?

7.  Whether Count VI of Plaintiff's Complaint should also be dismissed pursuant to Fed. R. Civ. P. 45 as Plaintiff cannot establish the calls were "intrastate" calls or that the calls were for the purpose of providing a "recorded message"?

8.  Whether this Court should sanction Plaintiff pursuant to Fed. R. Civ. P. 11 for bringing and maintaining claims he knew were not supported by law and for manufacturing lawsuits?

**BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## I.     INTRODUCTION

### A.     Procedural Background.

On August 30, 2023, Plaintiff, Mark W. Dobronski, commenced this action against Selectquote Insurance Services ("SelectQuote") and Tuan England Pham ("Pham"), an employee of SelectQuote, in the Michigan 18th District Court, by the filing of the Complaint ("Complaint"). The Complaint alleges claims arising under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, the Michigan Telephone Companies as Common Carriers Act, M.C.L. § 484.101, *et seq.*, and the Michigan Home Solicitation Sales Act, M.C.L. § 445.111, *et seq.* stemming from Plaintiff's receipt of two (2) unsolicited telemarketing calls initiated by or at the direction of SelectQuote. [Complaint, pp. 1-2, ¶ 1].

On October 13, 2023, SelectQuote  removed this case to the United States District Court for the Eastern District of Michigan. [ECF No. 1].

On July 17, 2024, Defendants filed the instant Defendants' Joint Motion to Dismiss Plaintiff's Complaint Pursuant to FRCP 12(c) and FRP 56 ("Motion") [ECF No. 33].

### B.     Preliminary Matters.

#### i.     Defendants failed to comply with the requirements of E.D. Mich. Local Rule 7.1(a).

Defendants failed to comply with the meet and confer requirements of E.D. Mich. L.R. 7.1(a) prior to the filing of their Motion.  On the face of their Motion, Defendants certifies that they sought concurrence in the relief being sought by sending emails to Plaintiff on July 15, 2024 and July 17, 2024.  In late June 2024, when the parties were planning a follow-up mediation date in this matter, Plaintiff made known to Defendants that Plaintiff would be vacationing with his family during this period and would not have reliable Internet access.  Plaintiff carries his cellular telephone with him on a 24/7 basis and could have easily been contacted. But, **Defendants made no attempt to telephone Plaintiff**. Attached at EXHIBIT A, hereto, is the Declaration of Mark W. Dobronski.  *See* Exhibit A, ¶ 6. Defendants filed their Motion on July 17, 2024. Had there been discussions, Plaintiff reasonably believes that one or more issues raised in the Motion could have been resolved without need for intervention by this Court. It is obvious that Defendants did not want to engage in any conference with Plaintiff, despite the requirement to do so.

E,D. Mich. L.R. 7.1(a) is clear and unambiguous in its mandatory requirement that a movant must, prior to the filing of a motion, engage in a conference with the adverse party to seek concurrence in the relief being sought by way of the proposed motion.  The rule clearly states that "[t]he conference must be held sufficiently in advance of filing the motion to allow a good faith interactive exchange aimed at resolving the matter."  Further, the commentary to the rule also sets forth that "sending

an email without engaging the other parties will not satisfy this rule."

It is not up to the Court to expend its energies when the parties have not sufficiently expended their own. *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 101 (D. Mass. 1996). Seeking concurrence from the opponent is a mandatory directive of the Local Rules of this District; inasmuch as defendant has failed to comply with this Local Rule prior to filing this motion, the Court must deny the relief that defendant seeks to obtain. *U.S. v. Ramesh*, 2009 WL 817549, at *6 (E.D.Mich.,2009). The Local Rules, as well as the Federal Rules of Civil Procedure, are called "rules," not "suggestions" or "guidelines," and as Justice (then Judge) Charles Levin stated in *People v. Farrar*, 36 Mich.App. 294, 299 193 N.W.2d 363, 366 (1971), "Unless we enforce the rules we encourage their violation...." *Bryce v. Commissioner of Social Security*, 2013 WL 12123666, at *1 (E.D. Mich. 2013).

For these reasons alone, the Court should strike or deny Defendants' motion. If Defendants are not sanctioned, Defendants and others will be emboldened to ignore the rule.

### ii.    Defendants did not serve a copy of the Motion upon Plaintiff.

As another preliminary issue, Plaintiff brings to the Court's attention that Plaintiff was not properly served with Defendants' Motion.  According to the certificate of service, certified to by Defendants' counsel, Kelley M. Donnelly, Plaintiff was served a copy of the Motion by mailing on July 17, 2024. [ECF No. 33,

14

PageID.661].  However, as of today – some 21 days later – Plaintiff has yet to receive said mailed copy of the Motion.  *See* Exhibit A, ¶ 7.  This strongly suggests that it was never mailed.

On July 24, 2024, Plaintiff first received a copy of Defendants' Motion <u>via electronic mail</u> as part of Defendants' submission to Special Master Eric Scheible in preparation for a mediation session that afternoon.  *Id.*

Plaintiff is appearing *pro se*.  Plaintiff is not an authorized filing user of the Court's CM/ECF system.  And, Plaintiff has not consented in writing to receiving filings via other electronic or any other means. Plaintiff was not served via the Court's CM/ECF system, for the simple reason that Plaintiff is *pro se* and has not been authorized by the Court to be a filing user for purposes of this case, thus Plaintiff cannot be so served. The certification given by Defendants' counsel, Kelley Donnelly, that she served Plaintiff via mailing on July 17, 2024 appears to be false as Plaintiff has not received a copy of the Motion via such mailing.  *Id.*

During the course of this case, Plaintiff has noted a disturbing pattern of not receiving mail service of documents from Defendants.  Although Plaintiff is, indeed, the "suer" in this litigation, the pattern of Plaintiff not receiving mail service of documents from Defendants appears to be because Defendants have engaged in *sewer* service.  *See U.S. v. Brand Jewelers, Inc.*, 318 F.Supp. 1293 (D.C.N.Y. 1970) (Discussing the technique of "sewer service," whereby a party fails to make proper

service and prepares false affidavits of service).

Fed. R. Civ. P. 5(a)(1) requires the service of every motion upon all parties.

Pursuant to the Electronic Filing Policies and Procedures for the Eastern District of Michigan, Rule 9(e):

> A party who is pro se and not a filing user... is entitled to a hard copy of any paper filed electronically. Service of such copy must be made according to the federal rules of procedure (civil and criminal) and local rules.

Given the fact that Plaintiff was not properly served with the motion, the motion should be denied. See *Griffin v. Kyle*, No. 2:10-cv-664, 2011 WL 2885007, at *3 (S.D. Ohio 2011) (finding that "it is not appropriate to rule on a motion which has not been served on the opposing party" and recommending denying defendant's motion for summary judgment), report and recommendation adopted by 2011 WL 3667401 (S.D. Ohio 2011); *Pullins v. Eldridge*, No. 1:20-cv-01311, 2021 WL 3860298, at *1 (S.D. Ind. 2021) (denying motions to dismiss where defendants failed to serve motions on pro se plaintiff who was "not a registered user on the Court's electronic filing system"); *Bey v. Ally Bank*, Civ. Action. No. 1:21-01079, 2021 WL 4891602, at *1–2 (W.D. Tenn. 2021) (recommending denying plaintiff's motion for entry of default where defendants electronically filed motion to dismiss but failed to serve motion on pro se plaintiff who was not registered to receive service of electronic filings), report and recommendation adopted by 2021 WL 4888331 (W.D. Tenn. 2021).

The fact that Plaintiff – a full week later – obtained a copy of the Motion immediately in advance of the July 25, 2024 mediation session should provide Defendants with no safe harbor.  Plaintiff was deprived of a full week to review the Motion and prepare to formulate a response thereto.  It is apparent that Defendants were trying to blindside the Plaintiff in advance of the mediation session. Even assuming that Plaintiff had learned of the filing through the Court's PACER system, arguably Plaintiff could have downloaded same.  But a pro se litigant's ability to access PACER and pay to download filings made in his or her case "does not replace the opposing party's duty to serve its motions" on that party in accordance with Federal Rule of Civil Procedure 5 and any applicable local rules. *McZeal v. Deutsche Bank Nat'l Tr. Co.*, No. A-16-CA-0430, 2016 WL 4154846, at *4 (W.D. Tex. 2016). Finding otherwise would be the equivalent of imposing a tax on pro se parties to pursue their claims. *Robinson v. Serra Chevrolet Buick GMC of Nashville*, 2022 WL 3586210, at *5 (M.D.Tenn. 2022).

The Court should not tolerate this type of litigation gamesmanship.

## II.    FACTUAL BACKGROUND

### A.    The claims.

This lawsuit is based upon two unsolicited telemarketing calls which Plaintiff received on his cell phone with number ending in -2951. Generally, the TCPA proscribes initiating any telephone call that constitutes telemarketing to any cellular

telephone without the prior express written consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2).  Further, the TCPA prohibits initiating any telephone solicitation to any residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry. 47 U.S.C. § 227(c)(3); 47 C.F.R.§ 64.1200(c)(2).

The MTCCCA proscribes, *inter alia*, a caller delivering intrastate commercial advertising having activated a feature to block the display of caller identification information.  M.C.L. § 484.125(2)(b).  The MHSSA proscribes, *inter alia*, making a telephone solicitation to a residential telephone subscriber whose residential telephone number is on the federal do-not-call list.  M.C.L. § 445.111b(1).

Wireless or cellular phone numbers listed on the national do not call registry are presumed to be residential telephone numbers. [Complaint, p. 11, ¶ 30].  *See also* 47 C.F.R. § 64.1200(e); *U.S. v. Dish Network LLC*, 75 F.Supp.3d 916, 926 (C.D.Ill., 2014).  Plaintiff's cell phone number -2951 is listed on the federal Do Not Call Registry, and has been so listed since May 16, 2014. [Complaint, p. 14, ¶ 39; *see also* Exhibit A, ¶ 14].  The subject cellular telephone is used primarily for personal, household, and family communications. [Complaint, p. 14, ¶ 40].

Defendants have attempted to obfuscate by claiming that Plaintiff "is not the primary user of the phone number." [ECF No. 33, PageID.592].  However, Plaintiff is an occupant of the residence, a regular user of the phone number, and was the actual

18

recipient of the calls at issue. The TCPA grants a private right of action to any "person

or entity." *Kane v. National Action Financial Services, Inc.*, 2011 WL 6018403, at *6

(E.D.Mich.,2011). Consumer who is a regular user of the phone line who occupies the

residence being called undoubtedly has the sort of interest in privacy, peace, and quiet

that Congress intended to protect. *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316,

326 (3rd Cir. 2015). It is the actual recipient, intended or not, who suffered the nuisance

or invasion of privacy. *Id.*, 804 F.3d at 327.

## B.    The Calls.

Call 1 was received by Plaintiff on August 10, 2024 at 11:53 A.M. [Complaint,

p. 22, ¶ 80]. Upon Plaintiff answering the call, the caller identified that he was with

"American Senior Benefits". [Complaint, p. 23, ¶ 82; *see also* Exhibit A, ¶ 18].[1] The

caller asked pre-qualifying questions of Plaintiff, including name, to which Plaintiff

provided the *faux* name Carlton Fisher. [Complaint, p. 24, ¶ 84; *see also* Exhibit A, ¶

19]. The call was then live transferred to Pham, at which time the call disconnected.

[*Id.*] Immediately after the call, Plaintiff dialed the telephone number displayed in the

caller identification display, only to learn that the calling telephone number was

---

[1] SelectQuote has provided a purported audio recording of Call 1 as an
exhibit to their Motion. [ECF No. 33-12]. In that recording, the caller identifies
himself as being with "Perfect Insurance Quotes." As Plaintiff will show, *infra*, the
audio recording is a fabrication with snippets of what appear to be Plaintiff's voice
interposed in the recording.

"spoofed" to a non-working number. [Complaint, p. 24, ¶ 85].

A short time later, on August 10, 2024 at 12:03 P.M., Call 2 was received by Plaintiff.  Upon Plaintiff answering the call, the caller asked to speak with Carlton Fisher. [Complaint, p. 24, ¶ 89].  The caller again identified himself as Pham. [Complaint, p. 25, ¶ 90].  Plaintiff inquired of Pham as to the identity of the person who live transferred Call 1 to Pham, to which Pham identified the person as a third-party agent that works for SelectQuote to live transfer calls to Pham. [Complaint, p. 25, ¶ 91].  Plaintiff made demand to be provided a written copy of SelectQuote's "Do Not Call Policy," to which Pham indicated he could not supply, nor was a copy supplied in response to Plaintiff's demand. [Complaint, p. 25, ¶ 92].  Immediately after the call, Plaintiff dialed the telephone number displayed in the caller identification display, only to learn that the calling telephone number was "spoofed." [Complaint, p. 25, ¶ 93].

## C. The Affiliate Marketer.

SelectQuote utilizes third-party marketing companies (termed an "affiliate marketer") to engage in telemarketing to identify consumers who meet SelectQuote's defined pre-qualification criteria and to live transfer those consumers to SelectQuote's agent to be solicited for insurance products. [ECF No. 33, PageID.593].  In the instance of Call 1, *supra*, SelectQuote has identified Amigos BPO LLC as being their affiliate marketer that actually initiated the call. [*Id.*]

### i. Contempt by Amigos BPO LLC.

During the course of discovery in this case, Plaintiff served a non-party Subpoena to Produce Documents, Information, or Objects upon Amigos BPO LLC. See EXHIBIT B, attached hereto.  Service of the subpoena was effected upon Amigos BPO by a professional process server on March 14, 2024.  See EXHIBIT C, attached hereto.  A copy of the subpoena was also served upon Defendants' counsel.  Amigos BPO never responded to the subpoena, never filed any objections, and never produced any documents or objects. [*See* Exhibit A, ¶ 27].

As will be evidenced, *infra*, there are serious questions as to the genuineness of documents, audio recordings, and video recordings which Defendants have introduced through their Motion – all of which Amigos BPO is the source of origination. Documents which Plaintiff had sought from Amigos BPO, but which were contempuosly not produced, would be key to further assessing the genuineness of the documents, audio recordings, and video recordings which Defendants have introduced.

Defendants and Amigos BPO should not be reward for playing "hide the ball." The Court should order Amigos BPO to show cause which it should not be found in contempt for its failure to response to the subpoena. *See* Fed. R. Civ. P. 45(g). Further, the Court should exclude from evidence any of Defendants' exhibits which Amigos BPO has produced to Defendants but failed to produce to Plaintiff.  *See* Fed. R. Civ. P. 37(b)(2).

**D.    The Lead Form.**

SelectQuote represents to this Court that, on July 3, 2023, at 1:01 P.M. ET, a Lead Form was submitted to Amigos BPO, which Lead Form was filled out and included both the phone number -2951 and the name "Carlton Fisher" as the person requesting a call for information regarding SelectQuote's products. [ECF No. 33, PageID.595]. "Carlton Fisher" is the pseudonym which Plaintiff provided the caller during Call 1, *supra*. [Complaint, p. 24, ¶ 84].

Defendants attach Defendants' Exhibit 8 [ECF No. 33-9, PageID.720], Defendants' Exhibit 9 [ECF No. 33-10, PageID.721], and Defendants' Exhibit 10 [ECF No. 33-11, PageID.722-723] to support their Motion as evidence of the information purportedly filled out on the Lead Form.

Defendants assert that the Amigos BPO lead data base "integrates with data from the Jornaya platform", and explains that "Jornaya is a service that captures data being entered on a lead generation form in real time." [ECF No. 33, PageID.596]. According to Defendants, "Jornaya is used by telemarketers for creating an audit trail for purposes of ensuring TCPA compliance." [*Id.*]   According to the Declaration of Omer Yusuf, an employee of Amigos BPO:

> Jornaya, a company that captures data being entered on our legal generation form for audio and compliance purposes, captured the information entered on the Lead Form and assigned it a unique identification of 'ac4c83fc-d77b-df2e-d0e7-59b2ccc3def4' (the 'Lead ID').

[ECF No. 33-4, PageID.674 , ¶ 19].  Yusuf avers that, at the time of input on July 3,

2023 at 1:01 P.M. ET, the Lead Form contained the name "Carlton Fisher" and Plaintiff's cellular telephone number ending in -2951. [ECF No. 33-4, PageID.674, ¶ 20].

Certainly Defendants' Exhibits 8, 9, and 10 create an impressive "show and tell" with what are purported to be images of the information appearing on the Lead Form. A review of the exhibits shows the same Lead ID appearing in each: to wit, AC4C83FC-D77B-DF2E-D0E7-59B2CCC3DEF4. Although Defendants and Yusuf have referenced Jornaya, and aver that "Jornaya... captured the information on the Lead Form and assigned it a unique identification...," conspicuously absent from the Motion is any exhibit from Jornaya evidencing the information which appeared on the Lead Form that Jornaya captured at the time of the lead event.

During the course of discovery, SelectQuote produced to Plaintiff a Jornaya Guardian TCPA Report ("Jornaya Report"), a copy of which is attached hereto as EXHIBIT D. This Jornaya Report reflects information relative to Lead ID 4C4C83FC-D77B-DF2E-D0E7-59B2CCC3DEF4, the same Lead ID referenced, *supra*. The Jornaya Report also includes a visual playback link which allows the viewer to observe the information which Jornaya witnessed being input on the Lead Form.

At the time that Plaintiff received the copy of the Jornaya Report from Defendants, Plaintiff notified Defendants' counsel, Kelley Donnelly, that the Jornaya Report nowhere reflects the name "Carlton Fisher" or Plaintiff's telephone number

ending in -2971. At that time, Defendants produced the Excel spreadsheet which appears at Exhibit 10 to their Motion [ECF No. 33-11, PageID.723].  The true origins of Defendants' Exhibit 10 are unknown, but what is known is that it did not originate with Jornaya.  It should not go unnoticed by the Court that Defendants did <u>not</u> produce the subject Jornaya Report as an exhibit to their Motion.  The obvious explanation for why Defendants have not produced the Jornaya Report is because it belies their story.

The Jornaya Report visual playback link provides an interactive capability for the viewer to enter values to match what was entered on the Lead Form.  Attached, at EXHIBIT E, is a screengrab of the visual playback with the following query:

|  |  |
|---|---|
| First Name: | CARLTON |
| Last Name: | FISHER |
| Phone: | ******2951 |

The match data results display a red X to the right of each of the three indicated fields. What these results do not tell us is the values that were entered on the Lead Form; but, what these results do tell us is that the name "Carlton Fisher" and Plaintiff's telephone number ending with -2951 were **NOT** the values that were purportedly entered on the Lead Form which Jornaya witnessed during the lead event on July 3, 2023 at 1:01 P.M. E.T.

According to the Jornaya Report, the Lead Form was filled out from a computer using the IP address of 88.209.227.97.  That IP address is part of a series of IP addresses assigned to an Internet service provider – Giganet Internet Szolgáltató Kft

– located in Nyíregyháza, Hungary.  Plaintiff was not in Hungary on July 3, 2023. [*See*

Exhibit A, ¶ 11].

The Jornaya Report also shows the TCPA disclosure statement captured at the

time that Jornaya witnessed the lead event, which disclosure statement contained the

following language:

> ... I further give expressed written consent by electronic signature to receive marketing communications regarding insurance products and services via authoamted telephone dialing system and/or pre-recorded calls and/or SMS/MMS from **MyRateChecker.com** and one or more of its marketing partners or its license insurance agents at the phone number and/or e-mail address provided to us, including wireless numbers, if applicable....

[Exhibit D].  However, in reviewing the screen shot of the purported web form

supplied by Defendants which Defendants allege Plaintiff filled out, the disclosure

statement is materially different, stating :

> ... I further give expressed written consent via this chat / webform to receive marketing communications regarding insurance products and services including Medicare Supplement, Medicare Advantage and Prescription Drug Plans and other health-related services via live automated telephone dialing system telephone call, text, or email A licensed insurance agent associated with **YourTopInsurance.com**.  I understand this request has been initiated by me and is an unscheduled contact request and one or more of its marketing partners or its Licensed Insurance agents at the phone number and/or e-mail address provided to us, including wireless numbers, if applicable....

[ECF No. 33-5, PageID.679-681].  *See also* Declaration of Omer Yusuf. [ECF No. 33-

4, PageID.673, ¶ 15].

In addition to the substantial differences in language between the two disclosures, it must be noted that the entity identified in the TCPA disclosure statement witnessed by Jornaya was MYRATECHECKER.COM. However, the entity identified in the TCPA disclosure statement which Defendants represent was displayed on the Lead Form was YOURTOPINSURANCE.COM.

A careful review of Defendants' Exhibits 8, 9, and 10 reveals additional evidence suggesting the non-bona fides of the exhibits.

Defendants represent that Defendants' Exhibit 8 "is a video of Amigo BPO's administrative panel for its internal data base, which integrates with data from the Jornaya platform." [ECF No. 33, PageID.596]. A screen grab of that video is attached hereto at EXHIBIT F.

Defendants represent that Defendants' Exhibit 9 is"the information submitted through the form... emailed to Amigos BOI's Gmail account in an Excel file." [ECF No. 33, PageID.596]. Three screen grabs of that video are attached hereto at EXHIBIT G.

Defendants represent that Defendants' Exhibit 10 "is a screenshot of the Excel spreadsheet identifying the UniversalLeadID, which is the same number in the two videos." [ECF No. 33, PageID.596].

Exhibit F, which is the screen grab of Defendants' Exhibit 8, clearly shows the "created date" as 7/3/2023 at 1:01:06 P.M. However, reviewing the third page of

Exhibit G, which is the screen grand of Defendants' Exhibit 9, the Column T shows a time of 7/3/23 at 13:00 (1:00 P.M.).  Compare this to Defendants' Exhibit 10, which shows in Column J merely a "lead date" of 07/03/2023.

Since Defendants' Exhibit 10 is purportedly the same purportedly "not altered"[2] Excel data depicted in Defendants' Exhibit 9 video, one would expect the spreadsheet columns to match up.  They do not.  Compare, as follows:

| Column | Def. Exhibit 9 / Pl. Exhibit FC Title | Data Field | Def. Exhibit 10 / Pl. Exhibit G Title | Data Field |
|---|---|---|---|---|
| A | ID | 27885 | | 27885 |
| B | Submitter | 9 | Univ Lead | AC4C83FC... |
| C | Lead ID | | First Name | carlton |
| D | Univ Lead | AC4C83FC... | Last Name | fisher |
| E | First Name | * | PhoneNum | -2951 |
| F | Last Name | * | Url | https://yourtop... |
| G | Phone Num | -2951 | QuoteType | Medicare |
| H | Email | | Status | Success |
| I | Zip | | Consent | BY CLICKING... |
| J | URL | http | LeadDate | 07/03/202 |
| K | | | | |
| L | | | | |
| M | | Success | | |
| N | | | | |
| O | | False | | |
| P | | 0 | | |
| Q | | 3 | | |
| R | | 2 | | |
| S | | 0:24 | | |
| T | | 7/3/2023 13:00 | | |
| U | | #### | | |
| V | | #### | | |

---

[2] *See* Declaration of Omer Yusuf. [ECF No. 33-4, PageID.675, ¶ 26].

Note:  (*) indicates data field obscured

Accordingly, it follows that Defendants' averments in their Motion, and Defendants' Exhibits 8, 9, and 10, representing that the name Carlton Fisher and Plaintiff's telephone number ending with -2951 were entered on the Lead Form, are **falsehoods**.

### E.    The Audio Recording of Call 1

SelectQuote has provided a purported audio recording of Call 1 at Defendants' Exhibit 11 to their Motion. [ECF No. 33-12, PageID.724].  In that recording, the caller identifies himself as being with "Perfect Insurance Quotes."  Listening to the audio recording, it is apparent that the audio is choppy when Plaintiff is speaking.  This is because the audio recording is not genuine, it has been created from snippets of Plaintiff's voice from another recording and spliced into the audio of the recording being offered by Defendants.

When Plaintiff received Call 1, the caller identified himself as being with "American Senior Benefits". [Complaint, p. 23, ¶ 82].  Plaintiff's daughter was present and overheard the Call 1 conversation, and she heard the caller identify himself as being with "American Senior Benefits."  See Declaration of Juli E. Smith, attached hereto at EXHIBIT H, ¶ 16.   Indeed, in the audio recording of Call 2 which Defendants' have supplied at Defendants' Exhibit 13 to their Motion [ECF No. 22-14, PageID.725], at 10:25 to 10:30 into the recording, Plaintiff can be heard talking to his daughter and verifying that the initial caller had identified by the name "American

Senior Benefits." Further, on August 10, 2024, contemporaneously after the calls and while the calls were still fresh in Plaintiff's mind, Plaintiff wrote to SelectQuote's counsel regarding the calls and also noted that the caller had identified himself as being with "American Senior Benefits." See EXHIBIT I.

A review of the entirety of the audio recording supplied at Defendants' Exhibit 11 [ECF No. 33-12] will reveal that, at no time during that recording, is the name "American Senior Benefits" mentioned. Yet, curiously, in the Declaration of Omer Yusuf supplied at Defendants' Exhibit 3, Yusuf states, regarding the call placed on August 10, 2023 at about 11:53 a.m.: "Amigos BPO is an affiliate marketing company that sometimes does business as American Senior Benefits." [ECF No. 33-4, PageID.671, ¶ 4]. Yusuf has made a tacit admission that, indeed, "American Senior Benefits" was the entity name provided during Call 1.

In short, the audio recording of Call 1, submitted as Defendants' Exhibit 11 [ECF No. 33-12], appears to be a fabrication.

## III.   STANDARD OF REVIEW

### A.   Fed. R. Civ. P. 56

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723

(6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006)**.**

## B.      Fed. R. Civ. P. 12(c)

The Court analyzes a Rule 12(c) motion for judgment on the pleadings with the same standard it would employ for a Rule 12(b)(6) motion to dismiss. *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549–50 (6th Cir. 2008) (citation omitted). The Court accepts as true all well-pleaded material allegations of the pleadings and draws reasonable factual inferences in favor of the non-moving party, but "need not accept as true legal conclusions or unwarranted factual inferences." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007) (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)). The complaint must "raise a right to relief above the speculative level, and [ ] state a claim to relief that is plausible on its face." *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). It is not enough to offer mere " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

30

*Twombly*, 550 U.S. at 555).  The burden of demonstrating that the complaint fails to adequately state a claim falls on the defendant. *Taylor v. City of Saginaw*, 922 F.3d 328, 331 (6th Cir. 2019).  However, ordinarily "if the requisite allegations are not in the complaint and a motion to dismiss for failure to state a claim upon which relief may be granted is made under Rule 12(b)(6), the pleader should be given the opportunity to amend the complaint, if she can, to show the existence of the missing elements." *Walker v. Shermeta, Adams, Von Allmen, PC*, 623 Fed.Appx. 764, 768 (6th Cir. 2015).

## IV.   ARGUMENT

### A.   Whether Counts I, III, VI, and VII of Plaintiff's Complaint Must Be Dismissed as Defendants Are Not Vicariously Liable for Either Call.

#### i.   Whether Defendants are vicariously liable for the alleged violations of the TCPA of Amigos BPO related to Call 1.

Defendants argued that SelectQuote and Pham are not vicariously liable for Call 1.  In support, Defendants cite an <u>unpublished</u> Michigan Court of Appeals decision involving this same plaintiff.  Unpublished state court opinions, which would not be treated as binding precedent by the state court, are not binding precedent in federal court. *Southern Railway Co. v. Foote Mineral Co.*, 384 F.2d 224, 228 (6th Cir. 1967).

At the motion to dismiss stage, a plaintiff need only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Mauer v. Am. Intercontinental Univ., Inc.*, 2016 WL 4651395, at *2 (N.D. Ill. 2016).

A defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller. *Gomez v. Campbell-Ewald Co.,* 768 F.3d 871, 879 (9ᵗʰ Cir. 2014). Under federal common-law principles of agency, there is vicarious liability for TCPA violations. *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 674, 577 U.S. 153, 168 (2016) citing *In re Joint Petition Filed by Dish Network*, LLC, 28 FCC Rcd. 6574 (2013). The Complaint expressly recites to Defendants' vicarious liability. [Complaint, pp. 16-17, ¶¶ 51-52]. Defendants hired the third-party telemarketers to engaged in the illegal telephone solicitations. [Complaint, p 19, ¶ 63]. The third-party telemarketers had actual authority or apparent authority from the Defendants to solicit consumers for representation by the Defendants. [Complaint, p. 21, ¶ 74]. Defendants personally authorized, directed, had control over, participated, and ratified the telephone solicitation activities by accepting the transferred calls of the called consumers and the substantial financial benefits derived from the insurance sold to the consumers as a result. [Complaint, pp. 21-22, ¶ 75].

Congress has delegated to the Federal Communications Commission ("FCC") the authority to promulgate regulations and enforce the requirements of the TCPA. See 47 U.S.C. § 227. The FCC has issued an extensive declaratory ruling on the issue of party liability under the TCPA, holding as follows:

[W]hile a seller does not generally initiate calls made through a

third-party telemarketer, it nonetheless may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services.

*In the Matter of Dish Network*, LLC, 28 FCC Rcd. 6574, 6593, 2013 WL 1934349, at *15, ¶ 48 (2013). The FCC provided the following reasoned explanation:

> [T]he seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules. By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.

*Id.*, 28 FCC Rcd. at 6593, 2013 WL 1934349, at *15, ¶ 47 (2013). The FCC further opined that imposing seller liability serves to ensure that "sellers will have an incentive to carefully choose their telemarketers to ensure compliance and to force consistent violators out of the marketplace." *Id.*, 28 FCC Rcd. at 6591, 2013 WL 1934349, at *14, ¶ 44 (2013).

In another case involving an insurance company and its independent agents making telephone solicitations, the FCC reiterated that the insurance company faced

vicarious liability for the telemarketing done by its independent agents, as follows:

> [A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call.

*In re State Farm Mutual Automobile Insurance Company*, 20 FCC Rcd. 13664, 13667, 2005 WL 1981564, at *3, ¶ 7 (2005).

The FCC has determined that vicarious liability in the TCPA context is governed by the federal common law of agency. See *Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 252 (4th Cir. 2018). Three agency theories may support vicarious liability: actual authority, apparent authority, and ratification. See *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014). The existence of an agency relationship is generally a question of fact. See *Ward v. Mgmt. Analysis Co. Emp. Disability Benefit Plan*, 135 F.3d 1276, 1283 (9th Cir. 1988). At the motion to dismiss stage, a plaintiff need only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 WL 4651395, at *2, 2016 U.S. Dist. LEXIS 120451, at *2 (N.D. Ill. Sept. 7, 2016).  The Complaint alleges a concert of action amongst the co-defendants to engage in telephone solicitation *en masse* to consumers to market their insurance products. [Complaint, p. 19,  ¶¶ 62-64].  Plaintiff made inquiry to Pham regarding the   person that initiated Call 1, to which Pam

34

explained that the third-party caller worked for SelectQuote to provide live transfers calls to Pham. [Complaint, p. 25, ¶ 91].  At the pleading stage, Plaintiff has plausibly alleged agency relationships between the third-party agent (now identified as Amigos BPO) and each of the Defendants. In the case of Call 1, when the call initiator transferred the call to Pham, Pham accepted the call and then proceeded to try to sell Medicare insurance to Plaintiff.  This plausibly suggests that the call initiator had authority to do what they did – initiate the telemarketing call and transfer it to the Defendants.  The Defendants ratified the call initiators' conduct by accepting the call and attempting to sell insurance to Plaintiff.

Defendants clearly had control over their third-party telemarketer at all times. Defendants dictated to its third-party telemarketers what types of leads it was seeking, and the information which Defendants required the third-party telemarketer to ferret out of the consumers. [Complaint, p. 19, ¶ 64].  At any time, Defendants could have terminated its relationship with their third-party telemarketer, or simply refused to accept the live transfer calls from their third-party telemarketer.

While Defendants are certainly attempting to hide behind its third party telemarketing entity – Amigos BPO -- that should not allow Defendants to skate away from liability.  _See_ _Birchmeier v. Caribbean Cruise Line, Inc._, 2012 WL 7062748, at *1 (N.D.Ill. 2012):

To offer an example, suppose that A, a well-heeled entity that wants to

> sell a product or service, stands next to B, an impecunious defendant, and directs B to place unsolicited, prerecorded calls to consumers on their cell phones. Defendants' position, it appears, is that only B, the impecunious dialer, would be liable and that A would get off scot-free. A Congressional enactment that permitted this would be absurd indeed. Fortunately that is not the law under the TCPA.

Obviously, since Defendants hired Amigos BPO to make outbound telemarketing calls on behalf of Defendants, Defendants were aware of the existence of said calls. Defendants cannot be allowed to play "ostrich" and put their heads in the sand as to what Amigos BPO was doing. The TCPA implementing regulations generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations. *In re Rules and Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397, 1995 WL 464817, ¶ 13 (1995). Calls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call. *Id.* The FCC has further clarified:

> However, we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised. In the case of either actions to enforce section 227(b) or actions to enforce do-not-call restrictions under section 227(c), we stress that nothing in this order requires a consumer to provide proof — at the time it files its complaint — that the seller should be held vicariously liable for the offending call.

*In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6593, 2013 WL 1934349, at *15, ¶ 47 (2013). Apparent authority holds a principal accountable for the results of third-party

beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal. *Id.*, 28 FCC Rcd. at 6586, 2013 WL 1934349, at *11, ¶ 34.  Such apparent authority can arise in multiple ways, and does not require that "a principal's manifestation must be directed to a specific third party in a communication made directly to that person." *Id.*, at *16 n.102. citing Restatement (Third) of Agency §2.03, cmt. c. Restrictions on an agent's authority that are known only to the principal and the agent do not defeat or supersede the consequences of apparent authority for the principal's legal relations with others. *Id.* In such circumstances, for example, the presence of contractual terms purporting to forbid a third-party marketing entity from engaging in unlawful telemarketing activities would not, by themselves, absolve the seller of vicarious liability. *Id.*

### ii.    Whether there is no violation of the TCPA for Call 2 as Pham manually dialed Plaintiff after the disconnection of Call 1.

As to Call 2, Plaintiff has alleged that he heard a click sound followed by approximately 3 seconds of silence, then heard Pham come on the line. [Complaint, p. 24, ¶ 89].  The sound and delay are indicative of the use an automatic telephone dialing system. [Complaint, p. 23, ¶ 83].  The caller identification number information was also spoofed. [Complaint, p. 25, ¶ 93].  This is also indicative of the use of an automatic telephone dialing system. [Complaint, p. 24, ¶ 86].

Whether Call 2 was "merely a continuation of Call 1, not a new call" [ECF No. 33, PageID.607] is not relevant.  The TCPA promulgates that "[n]o person or entity may... initiate any telephone call (other than a call made... with the prior express

consent of the called party) using an automatic telephone dialing system... to any telephone number assigned to a... cellular telephone service...." 47 C.F.R. § 64.1200(a)(1)(iii).  The  phrase "any telephone call" does not differentiate between a "new" call or a "continuation" of a call.

**B.**     **Whether Count I, III, VI, and VII of Plaintiff's Complaint Must Be Dismissed as Plaintiff Provided Prior Express Consent To Be Called.**

Plaintiff did not provide "prior express consent" or "permission" to be called. Plaintiff did not fill out the Lead Form. As has been shown, *supra*, the Lead Form which Defendants' allege Plaintiff filled out is fraudulent.

Further, even assuming, *arguendo*, that Plaintiff did complete the Lead Form, the caller in Call 1 identified himself as being with "American Senior Benefits" [Complaint, p. 23, ¶ 82]– or, if one listens to the audio recording which Defendants have supplied at  Defendants' Exhibit 11 the caller identifies himself as being with "Perfect Insurance Quotes" [ECF No. 33-12, PageID.724] – Defendants have presented no evidence that Plaintiff consented to receive telemarketing calls from either American Senior Benefits or Perfect Insurance Quotes, neither of which entities are named amongst the "2,098 different insurance companies and agents" in the list of marketing partners which are listed in the Lead Form. [ECF No. 33, PageID.593-594]. Screen grabs of the relevant portions of the Lead Form marketing partners list are attached hereto at EXHIBIT J.

**C.      Count II, IV, and V of Plaintiff's Complaint Must Be Dismissed As a Matter of Law As There is Not Private Cause of Action.**

**i.      Count II - 47 C.F.R. § 64.1200(a)(7)(i).**

Defendants cite to *Dobronski v. Family First Life, LLC* to support their argument that there is no private right of action arising under 47 C.F.R. 64.1200(a)(7)(i). However, other courts have concluded that there is a viable claim arising under 47 C.F.R. § 64.1200(a)(7)(i).  See *Leyse v. Bank of America*, 2016 WL 5928683, at *5 (D.NJ 2016) (holding that violation of 47 C.F.R. § 64.1200(a)(7)(i) states a claim under 47 U.S.C. § 227(b)(1)(B)); *Schweitzer v. Direct Energy, L.P.*, 2021 WL 5298989, at *2 (E.D. Pa. 2021) (denying defendant's motion for summary judgment to dismiss claim under 47 C.F.R. § 64.1200(a)(7)(I)).

**ii.      Count IV - 47 C.F.R. § 64.1200(d)(1).**

Defendants next assert that there no private right of action arising under 47 C.F.R. § 64.1200(d)(1) from a caller's failure to provide a do-not-call policy on demand.  Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list. 47 C.F.R. § 64.1200(d)(1).  When a demand has been made to a caller, and the caller cannot supply the written policy, implicit is the fact that the caller does not have a written policy. Plaintiff made such a demand to Pham during Call 2, and Plaintiff was never provided the written policy. [Complaint, p. 25, ¶ 92].

Other courts have found that there is a private right of action arising from a violation of 47 C.F.R. § 64.1200(d)(1).  *See Dobronski v. Selectquote Insurance Services*, 462 F.Supp.3d 784, 791 (E.D.Mich., 2020) (finding that a private right of action exists for a violation of 47 C.F.R. § 64.1200(d)(1)); *Anthony v. Pro Custom Solar, LLC*, 2022 WL 1634870, at *5 (C.D.Cal., 2022) (Plaintiff may pursue a private right of action to enforce Defendant's alleged violation of 47 C.F.R. § 64.1200(d)(1)).

### iii.     Count V - 47 C.F.R. § 64.1601(e).

There is a split between courts as to whether a private right of action exists for a violation of 47 C.F.R. § 64.1601(e)(1).  Defendants cite to four decisions in this district involving this same Plaintiff as the authority to declare that no private right of action exists.  None of these decisions are binding.  This district court is not bound by the decision of another district court. *Golden Star Wholesale, Inc. v. ZB Importing, Inc.*, 531 F.Supp.3d 1231, 1255 (E.D.Mich., 2021).  Federal district judges, sitting as sole adjudicators, lack authority to render precedential decisions binding other judges, even members of the same court. *American Elec. Power Co., Inc. v. Connecticut*, 131 S.Ct. 2527, 2540, 564 U.S. 410, 428 (U.S., 2011)

Defendants fail to cite to any out of district authority; and, most certainly, Defendants have deliberately closed its eyes to any authority which supports that a private right of action does exist.  All of the *Dobronski* decisions in this District have relied upon *Worsham v. Travel Options, Inc.*, 2016 WL 4592373, at *4 (D.Md., 2016)

to find that there is no private right of action.  However, the judge in *Travel Options* expressly discloses in his decision uncertainty on his own part as to whether the regulation was adopted by the FCC pursuant to the authority of Section 227(b), (c), or (d) of the TCPA. Subsequent to *Travel Options*, a state appellate court considered the same issue and determined that there is a private right of action, noting that the *Travel Options* judge erred in determining the regulation was adopted pursuant to Section 227(d).  See *Worsham v. LifeStation, Inc.*, No. 661, Sept. 2020 Term, 2021 WL 5358876, at *16–17 (Md. Ct. Spec. App., November 17, 2021).

On December 13, 2023, Plaintiff filed a petition for declaratory ruling with the FCC seeking to end the controversy as to the issue of under what specific statutory authority the FCC was acting when it adopted 47 C.F.R. § 64.1601(e).  A copy of the petition is attached hereto as EXHIBIT K.  That petition is presently pending before the FCC and will be acted upon in due course.  Plaintiff adopts the arguments raised in the petition for rulemaking as if set forth herein.

In the past, when answers to questions implicate the FCC's statutory authority to interpret the Act, to say nothing of its own regulations, the Sixth Circuit has made a referral to the FCC under the doctrine of primary jurisdiction. *See Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 467 (6th Cir. 2010). The doctrine of primary jurisdiction allows courts to refer a matter to the relevant agency "whenever enforcement of the claim requires the resolution of issues which, under a regulatory

scheme, have been placed within the special competence of an administrative body[.]" *U.S. v. Western Pacific Railroad Co.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). A review of the case law shows that courts have considered referring matters to agencies for a variety of reasons: (1) to advance regulatory uniformity, see *U.S. v. Radio Corp. of Am.*, 358 U.S. 334, 346, 350, 79 S.Ct. 457, 3 L.Ed.2d 354 (1959); (2) to answer a "question ... within the agency's discretion," *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 60 (2d Cir.2006); and (3) to benefit from "technical or policy considerations within the agency's ... expertise," *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82–83 (2d Cir.2006); see *Far E. Conference v. United States*, 342 U.S. 570, 574, 72 S.Ct. 492, 96 L.Ed. 576 (1952). "[T]he outstanding feature of the doctrine is ... its flexibility permitting ... courts to make a workable allocation of business between themselves and the agencies." *Civil Aeronautics Bd. v. Modern Air Transp., Inc.*, 179 F.2d 622, 625 (2d Cir.1950); see *Western Pacific. Railroad Co.*, 352 U.S. at 64, 77 S.Ct. 161. Each of these considerations favors a referral.

Plaintiff urges this to Court refer this issue to the FCC in order to bring an end to the controversy.  The FCC is in the best position to elaborate as to the authority it was acting when it adopted the subject regulation. This issue need not be decided at this stage, and can easily be revisited by this Court after the FCC renders a declaratory ruling, thus allowing this case to efficiently proceed without undue delay.

     **D.**    **Whether Counts I and III of Plaintiff's Complaint related to**

**violations of the TCPA must also be dismissed as the Phone Number is not a residential number.**

Defendants assert that the phone number at issue in this case "is a business number." [ECF No. 33, PageID.610], and that "business numbers are not permitted to registered on the National Do Not Call Registry." [*Id.*]

In point of fact, the subject telephone number is a cellular telephone number. [Complaint, p. 14, ¶ 38].  The subject cellular telephone number is listed on the National Do Not Call Registry. [Complaint, p. 15, ¶ 39].  The subject cellular telephone number is used primarily for personal, family, and household communications. [Complaint, p. 15, ¶ 40].  Plaintiff's daughter, who usually has possession of the subject cellular telephone, has averred that the subject cellular telephone is not used for any business purpose. [Exhibit H, ¶ 8].  At no time has Plaintiff held out the subject cellular telephone number as a business number.

The FCC's policy is that "cellular numbers that [have been] placed on the [Do Not Call] registry [are] presumed to be residential." *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324 (D. Mass. 2020) (citing *In Re Rules & Regulations Implementing the TCPA,* 18 FCC Rcd. 14014, 14039 (2003)) (finding that plaintiff "properly alleged that his cellphone [was] a residential line" by alleging that he (1) "placed his cellular phone number on the National Do Not Call registry" and (2) "use[d] his cell phone as his residential line"). Furthermore, "a subscriber's use of a

43

residential phone (including a presumptively residential cell phone) in connection with a home-based business does not necessarily take an otherwise residential subscriber outside the protection of § 227(c) [of the TCPA]." *Chennette v. Porch.Com, Inc.*, 50 F.4th 1217, 1224 (9th Cir. 2022).   A presumptively residential cell phone can be residential even when used for both personal and business purposes. *Id.*

A majority of district courts have concluded that a phone used for both personal and business purposes can still be regarded as residential within the meaning of § 227(c), depending upon the facts and circumstances. *See*, *e.g.*, *Mattson v. New Penn Fin., LLC*, No. 3:18-cv-00990-YY, 2020 WL 6270907, at *2 (D. Or., 2020) ("Although [plaintiff's] use of a phone line for personal calls does not automatically transform it into a residential line for purposes of the TCPA, neither does his use of a personal line for business calls automatically transform it into a business line."); *Clements v. Porch.com, Inc.*, No. 1:20-cv-00003-SLG, 2020 WL 5739591, at *5 (D. Alaska 2020) (holding that phones used for home-based businesses fall within the TCPA's zone of interest); *Smith v. Truman Rd. Dev., LLC*, No. 4:18-cv-00670-NKL, 2020 WL 2044730, at *12 (W.D. Mo. Apr. 28, 2020) (holding that a cell phone used at least 60 percent for personal purposes can be residential); *Blevins v. Premium Merch. Funding One, LLC*, No. 2:18-cv-377, 2018 WL 5303973, at *2–3 (S.D. Ohio 2018) ("[C]ourts have routinely looked at the facts and circumstances surrounding a particular case before deciding whether TCPA protection extended to a particular telephone number

that was used for both business and residential purposes."); *see also Bank v. Indep.*

*Energy Grp. LLC*, No. 12-cv-1369, 2014 WL 4954618, at *3 (E.D.N.Y. Oct. 2, 2014)

(holding that phones registered as "residential" qualify as "residential" within the

meaning of the TCPA as long as the subscriber does not hold out such numbers to the

public as a business line).

> **E.  Whether Count VI of Plaintiff's Complaint Related to Violations of the MTCCCA Must Be Dismissed As Plaintiff Fails to State a Claim.**

Plaintiff concedes that there was no violation of M.C.L. § 484.125(2)(a), as there

was no recorded message utilized; this reference was inadvertently included during the

cut and paste of the Complaint, and should have only made reference to M.C.L. §

484.125(2)(b) being violated.

Defendants asserts that the "claims related to M.C.L. § 484.125(2)(b) should be

dismissed as it applies only to 'intrastate' calls and Plaintiff has not plausibly alleged

that anyone he spoke to was calling from Michigan." [ECF No. 33, PageID.611].

Defendants further add that "it is clear that the calls occurred from Ohio and California,

respectively." [ECF No. 33, PageID.611-612].  Defendants' offer absolutely no proof

to support that any call occurred from Ohio.

As to whether the calls were "intrastate", the Complaint shows that both of the

initiated telephone solicitations displayed caller identification numbers with a <u>Michigan</u>

area code [Complaint, p. 23, ¶ 81; p. 24,¶ 88], were received by Plaintiff's residential

telephone which has a <u>Michigan</u> area code [Complaint, p. 23, ¶ 80; p. 24, ¶ 87], Plaintiff has a residence in <u>Michigan</u> [Complaint, p. 1, ¶ 2] , and Plaintiff was in <u>Michigan</u> when the calls were received [Complaint, p. 3, ¶ 9]. Courts routinely take judicial notice of the geographic regions associated with telephone area codes. See, *e.g.*, *U.S. v. Deckard*, 816 F.2d 426, 428 (8th Cir.1987)(taking judicial notice of the 314 area code).

Given that both calls displayed caller identification numbers with Michigan area codes, it is reasonable to conclude that, if the callers were indeed located outside of Michigan, they utilized technology and equipment such that the call originated on the public switched telephone network from within Michigan.

A complaint stating that plaintiff is a resident of Michigan is sufficient for the court to plausibly infer that the alleged calls were received while plaintiff was using his phone in Michigan and was also therefore a subscriber  to a telephone service from a telephone company that provides service and is regulated in Michigan. *Samataro v. Keller Williams Realty, Inc.*, 2021 WL 4927422, at *6 (W.D.Tex., 2021).

**F.    Whether the Court Should Sanction Plaintiff for Bringing and Maintaining Claims Which He Knew Were Frivolous and for Manufacturing Lawsuits.**

Nothing about Plaintiff's claims set forth in the Complaint have been shown to be frivolous.  Instead, what has been shown is that Defendants have set forth frivolous defenses, including fabricating a fraudulent Lead Form and an altered audio recording.

Defendants' conduct in this regard should be sanctioned.

The fact that Plaintiff has filed other TCPA suits does not deprive him of standing, nor does that fact bar this suit. Plaintiff's decision to pursue his rights under the TCPA "should not negate otherwise privacy interests simply because [he] may be motivated to sue by the TCPA's damages provisions." *Abramson v. Oasis Power LLC*, No. 2:18-CV-00479, 2018 WL 4101857, at *5 (W.D. Pa. 2018), *report and recommendation adopted*, No. CV 18-479, 2018 WL 4095538 (W.D. Pa. 2018). Defendants cannot and have not cited a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders. *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). While Defendants are understandably frustrated by Plaintiff's efficacy, he is doing exactly what Congress intended — enforcing the law. *See Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005) (recognizing that private right of action under TCPA demonstrates Congressional intent to incentivize aggrieved parties to act as "private attorneys general").

## **CONCLUSION**

For the foregoing reasons, Plaintiff requests that this Court deny Defendants' Joint Motion to Dismiss Plaintiff's Complaint Pursuant to FRCP 12(c) and FRCP 56 [ECF No. 33], and such other relief as this Court deems appropriate.

Respectfully submitted,

Date: August 7, 2024

_____
Mark W. Dobronski
Post Office Box 222
Dexter, Michigan 48130-0222
(734) 641-2300
markdobronski@yahoo.com
Plaintiff *In Propria Persona*

## CERTIFICATE OF SERVICE

I hereby certify that on **August 7, 2024**, I electronically filed the foregoing *Plaintiff's Response in Opposition to Defendants' Joint Motion to Dismiss Plaintiff's Complaint Pursuant to FRCP 12(c) and FRCP 56* with the Clerk of the Court via the Court's Pro Se Document Upload utility, which will send notification of such filing to all counsel of record via the CM/ECF system.

_____
Mark W. Dobronski