UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK DOBRONSKI,

          Plaintiff,

v.

SELECTQUOTE INSURANCE
SERVICES and
TUAN ENGLAND PHAM,

          Defendants.

_____/

Case No. 2:23-cv-12597

HONORABLE STEPHEN J. MURPHY, III

## OMNIBUS ORDER [33, 37, 39, 43, 45]

Mark Dobronski, proceeding pro se,[1] sued Selectquote Insurance Services and its employee Tuan England Pham for alleged violations of the Telephone Consumer Protection Act, the Michigan Telephone Companies as Common Carriers Act, and the Michigan Home Solicitation Sales Act. *See generally* ECF 1. Defendants denied liability and moved for judgment on the pleadings and summary judgment. ECF 33. After a motion hearing, Dobronski moved to reopen discovery. ECF 45. For the reasons discussed below, the Court must grant Defendants' motion for summary judgment in part and deny it in part. The Court will deny Dobronski's motion to reopen discovery.

---

[1] Although Dobronski proceeds pro se, the Court is aware that he is or was an attorney, once served as a state judge, and has extensive experience with TCPA cases. ECF 33-2, PgID 624. Courts generally give less solicitude, if any, to attorneys proceeding pro se. *See Chevron Corp. v. Donziger*, 990 F.3d 191, 203 (2d Cir. 2021).

1

BACKGROUND[2]

The case concerns two telephone calls answered by Dobronski on August 10, 2023. The first ("Call One") came from Amigos BPO, an "affiliate marketing company" that owns and operates websites designed to generate leads for insurance sales. ECF 33-4, PgID 671. Amigos BPO initiated Call One to Dobronski before it transferred the call to Selectquote, an insurance company that hired Amigos BPO to provide marketing services. ECF 33-7, PgID 695. The second ("Call Two") came directly from Selectquote (through its employee, Tuan Pham), shortly after Call One disconnected. *Id.* at 696. During Call Two, Dobronski requested Selectquote's do-not-call policy but did not receive it. ECF 33-13, at 11:20–11:35.

On both calls, Dobronski identified himself as "Carlton Fisher." ECF 33-2, PgID 631; ECF 33-13, at 00:05. Both calls were made to the same phone number. ECF 38-1, PgID 819–20. Although the number is registered to Dobronski's business, it is used by his daughter for personal calls. *Id.* at 818–19. The number is listed on the national do-not-call registry. *Id.* at 819. During the calls at issue here, Pham identified himself and stated that he was calling from California but was licensed as an insurance agent in Michigan. ECF 33-13, at 00:32–00:36. The parties disputed whether either or both calls were made in violation of state and federal law.

A full understanding of the parties' dispute requires a description of the relationship between Amigos BPO and Selectquote. Amigos BPO generates phone

---

[2] As is often the case, the parties' stories conflict. If there is evidence to support two narratives, the Court recites the plaintiff-friendly version. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

calls to individuals who are interested in the type of insurance products that Selectquote offers. ECF 33-4, PgID 671–72. To generate the calls, Amigos BPO maintains a number of websites with so-called "lead generation forms" into which individuals can enter their personal information to receive marketing calls about insurance services. *Id.* at 672. At issue here is a lead form on "yourtopinsurance.com." ECF 38-1, PgID 811, 813. When a prospective customer enters their information into the form on that site, a few things happen. First, the customer checks a box evidencing consent to receive marketing communications from myratechecker.com and its marketing partners.[3] *Id.* at 813. Simultaneously, Journaya, a vendor used by Amigos BPO, tracks for compliance purposes the information that a user enters into the form. ECF 33-4, PgID 674. Each lead possesses a unique alphanumeric "lead ID." *Id.* Amigos BPO enters the information in the leads into its internal database and then calls telephone numbers in the database. *Id.* Once a call is established, Amigos BPO transfers the call to Selectquote.

On July 3, 2023, Amigos BPO's database sent an automated email with an attached spreadsheet of leads generated that day. ECF 33-10, at 00:47–01:01. One of the leads—AC4C83FC-D77B-DF2E-D0E7-59B2CCC3DEF4—showed that someone entered the relevant phone number on yourtopinsurance.com. *Id.* Despite Defendants' assertion to the contrary, the video that they provided to depict the email

---

[3] Defendants' Exhibit 4 suggests that the lead form sought consent for calls from yourtopinsurance.com and its marketing partners (rather than myratechecker.com). *See* ECF 33-5, PgID 680–81. The Court will resolve that conflict in the evidence in Dobronski's favor as the nonmovant.

does not include any individual's name.[4] *Id.* In fact, when the user selected a different cell in Column E ("FirstName"), the Excel Formula Bar—the space near the top of the screen that usually shows a cell's content—was blank. ECF 33-10, at 00:40.

According to Amigos BPO, a lead entry was created in its internal database with the same lead ID, phone number, and the name "Carlton Fisher" on July 3, 2023. ECF 33-4, PgID 674. Amigos BPO averred that the time and date field of its database entries cannot be edited after the fact. *Id.*

Journaya, however, also tracked the information submitted in the lead form for TCPA compliance and supplied a compliance report to Selectquote. *Id.*; ECF 38-1, PgID 806–11. The report includes the correct lead ID and time, and it shows a screen recording of a user filling in the lead form. *See* ECF 38-1, PgID 808–10. The report does not reveal what information was input, but it has a tool that can confirm whether the information supplied to the tool matched the information placed in the lead form. *Id.* at 811. The report appears to show that the lead form affiliated with the lead ID included no space for a user to input a first name. *Id.* In addition, searches for "carlton," "fisher," and the phone number did not yield a match with the lead form. *Id.*

---

[4] Defendants also included as Exhibit 10 what they aver is a "screenshot" of the relevant row from the spreadsheet. ECF 33-11. That row shows columns for a first and last name and includes "carlton" and "fisher." But that spreadsheet oddly excludes columns that are visible on the video—*e.g.*, Column B, showing "9," Column O showing "FALSE," Column S showing "0:00:24." *See* ECF 33-9. And the screenshot's Column J shows only "07/03/2023" when what appears to be its video analog (Column T) shows "7/3/2023 13:00." ECF 33-9; ECF 33-11. Defendants offered no explanation for the discrepancies.

Amigos BPO averred that they called Dobronski only because he consented to the call by filling out the lead form. *See* 33-4, PgID 672. But Dobronski denied ever filling out the form. ECF 38-1, PgID 795. Instead, he suggested that the name Carlton Fisher must have been added after the fact to align with the name that he made up on the spot during Call One on August 10, 2023. *Id.*; ECF 38, PgID 771.

Dobronski sued Selectquote and Pham and alleged that their conduct related to both calls violated state and federal law. ECF 1. Defendants moved for judgment on the pleadings and for summary judgment. ECF 33. The Court held oral argument on the motion on December 11, 2024. The parties then engaged in a flurry of filings related to the evidence that the Court should consider in deciding this motion. *See* ECF 43–49.

## LEGAL STANDARD

Defendants moved for judgment under Federal Rules of Civil Procedure 12(c) and 56. ECF 33. Both parties, however, presented "matters outside the pleadings" to the Court, and the Court will not exclude them. *See* Fed. R. Civ. P. 12(d). The Court will thus approach the motion as a request for summary judgment. *Id.*

The Court must grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party may not simply rest on the

pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

Dobronski alleged that both Calls One and Two violated three different statutes—state and federal—in several respects across seven counts. *See generally* ECF 1. Defendants moved for summary judgment and included arguments that they believe refute each of the counts. *See* ECF 33, PgID 590–91. In response, Dobronski argued that certain procedural defects merit striking Defendants' motion, ECF 38, PgID 755–60; both sides argued that the other side committed sanctionable conduct. ECF 33, PgID 612–15; ECF 38, PgID 789–90.

The Court will first address the threshold defects that Dobronski alleged, then it will address the Defendants' evidence and arguments that are applicable to all of Plaintiff's counts and will thereafter address the remaining arguments count by

count. While doing so, the Court will resolve the flurry of evidentiary filings. The Court will conclude with the parties' requests for sanctions.

I.   <u>Procedural Defects</u>

Dobronski alleged two procedural defects: that Defendants failed to confer with him regarding their requested relief as required by Local Rule 7.1, and that Defendants never properly served the motion. ECF 38, PgID 755–60. Neither issue warrants Dobronski's requested relief—to strike or deny Defendants' motion.

First, Defendants emailed Dobronski twice before filing their motion. ECF 40-2, PgID 859–61. Dobronski argued that he informed Defendants that he would have inconsistent internet access in the days preceding the dispositive motion deadline. ECF 38, PgID 756. Nonetheless, he replied to Defendants' emails on the day of the motion deadline and after the motion was filed and suggested that he could meet *after* the deadline passed. ECF 40-2, PgID 859. Defendants informed Dobronski that if he wanted to withdraw any claims, they could work together on that, but that Defendants would not withdraw the motion. *Id.* Dobronski removed no claims (although he conceded in his response that one was frivolous), ECF 38, PgID 788, despite having notice of Defendants' arguments from their motion.

Parties should endeavor to comply with Local Rule 7.1, and Defendants did so here. The Court finds that Defendants attempted to engage Dobronski in advance of the deadline. Defendants did not send a perfunctory email minutes before filing their motion. Instead, they sent an email and a follow-up. Dobronski stated in his brief that he told Defendants that he was accessible by phone. ECF 38, PgID 756. That fact is

unsupported because it is absent from his declaration. Instead, he declared only that he *was* available by phone, not that he *told* that to the Defendants. *See* ECF 38-1, PgID 794. The Court will not hold Defendants to the exacting standard requested by Dobronski, especially when the Court doubts that Defendants could have obtained Dobronski's concurrence regarding the dispositive motion. *Walls v. Detroit*, 993 F.2d 1548 n.2 (6th Cir. 1993) (unpublished table opinion).

Second, Dobronski argued that he did not receive a copy of the motion until July 24, 2024. ECF 38, PgID 757–58. But Defendants certified that they mailed a copy to Dobronski's listed address. ECF 33, PgID 616. The Court will not disregard this fully briefed dispositive motion on Dobronski's bare assertion that he did not receive a copy. Instead of raising the issue immediately, or moving for extra time to prepare his response, Dobronski saved the argument for his, notably overlength, brief. And he responded substantively to all of Defendants' arguments. *See generally* ECF 38.

Dobronski lodged a similar argument before. As here, despite having actual notice of a motion, Dobronski accused a different defendant of failing to mail him a hard copy. The court rejected the argument as gamesmanship. *Dobronski v. Tobias & Assocs.*, No. 23-cv-10331, 2023 WL 7005844, at *3 (E.D. Mich. Sept. 25, 2023), *report and recommendation adopted in relevant part*, 2024 WL 1174553 (E.D. Mich. Mar. 18, 2024). In fact, much of Dobronski's legal argument on the point is identical to that which was made in the other case. *Compare* ECF 38, PgID 759–60, *with Tobias & Assocs.*, No. 23-cv-10331, ECF 34, PgID 252–54.

8

Given the actual notice, the lack of prejudice, and concerns about rewarding repeated attempts at gamesmanship, the Court will not strike the motion. *See McKinnie v. Roadway Express, Inc.*, 341 F.3d 554, 558 (6th Cir. 2003) (noting in light of prior holdings that "[r]eversal can hardly be appropriate when a party has actual knowledge of a pending motion despite legally inadequate service").

## II.    Call One—Vicarious Liability

The parties appear to agree that, under the TCPA, a caller is liable only for calls that it initiates and calls initiated by its agents as determined by federal common-law agency principles. ECF 33, PgID 600–01; ECF 38, PgID 775; *see Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) (explaining in dicta that the Court had no reason to question the Ninth Circuit's view that "under federal common-law principles of agency, there is vicarious liability for TCPA violations"); *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 372 (6th Cir. 2015) (discussing vicarious liability for TCPA violations). Defendants argued that Selectquote and Pham are not vicariously liable for Amigos BPO's initiation of Call One. ECF 33, PgID 600. Dobronski disagreed. ECF 38, PgID 776–78.

Under general principles of agency, a principal is liable for its agent's acts only when the agent acts with actual or apparent authority or when the principal ratifies the agent's acts. *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014); *Jonna v. Latinum*, 617 F. Supp. 3d 758, 771–72 (E.D. Mich. 2022). The Michigan Court of Appeals addressed a relatively similar case and concluded, in a well-reasoned opinion, that Dobronski failed to create genuine fact disputes on agency

9

liability. *Dobronski v. NPS, Inc.*, No. 356617, 2022 WL 1194212, at *4–5 (Mich. Ct. App. Apr. 21, 2022).

For largely the same reasons (and although the *NPS* decision is merely persuasive), the Court concludes that Selectquote is not liable for Amigos BPO's actions. In the absence of further evidence, the agreement between Amigos BPO and Selectquote, which expressly forbid the former from making illegal calls, undermines actual authority. ECF 33-8, PgID 702. And the lack of evidence of any communication from Selectquote to Dobronski prior to the call undermines apparent authority. *See* Restatement (Third) of Agency § 4.01, cmt. d (2006) ("[T]he principal's manifestation of assent to the agent is essential to the presence of actual authority, . . . and the principal's manifestation to the third party is essential to the presence of apparent authority . . . .").

In addition, the facts indicate that Selectquote did not ratify Amigos BPO's acts. First, Dobronski provided no evidence that Selectquote manifested assent to the way Amigos BPO initiated the call. Second, acceptance of the call was not "justifiable *only* on the assumption that" Selectquote "consent[ed] to be bound by the act's" illegality. Restatement (Third) of Agency § 4.01, cmt. d (2006). Selectquote's actions are also justifiable on a belief that Amigos BPO was adhering to its contract with Selectquote. Dobronski's offered rule—that merely accepting the transfer of one illegal call is sufficient ratification—would largely swallow the baseline rule that a telemarketer is not always liable for the actions of their agents. And, ultimately, Dobronski presented no evidence to support an inference that Selectquote was aware

10

that Amigos BPO engaged in TCPA-violative conduct or was intentionally blind to Amigos BPO's conduct. *See NPS*, 2022 WL 1194212, at \*6; Restatement (Third) of Agency § 4.01, cmt. b (2006) ("The principal is not bound by a ratification made without knowledge of material facts about the agent's act . . . .").[5]

Defendants are thus entitled to summary judgment on any theories of liability that arise out of Call One. The Court will thus enter at least partial summary judgment for Defendants on Counts One, Two, Three, Five, Six, and Seven.[6] The remainder of this order will thus focus solely on Defendant's liability for Call Two.

III.   Consent to Receive Call Two—Counts One, Three, Six, and Seven

A.  *The Lead Form*

Defendants argued that Counts One, Three, Six, and Seven fail because Dobronski consented to receive both calls when he filled out Amigos BPO's lead form. *See* ECF 33, PgID 607. The TCPA and its implementing regulations prohibit entities from, *inter alia*, (1) making any call using an automatic telephone dialing system to any telephone number assigned to a cellular telephone service, 47 U.S.C. § 227(b)(1)(A)(iii), and (2) initiating any telephone solicitation to a residential

---

[5] At the motion hearing, Dobronski suggested that *Dobronski v. Family First Life, LLC*, No. 2:22-cv-12039, 2024 WL 575858, at \*11 (E.D. Mich. Jan. 19, 2024), *report and recommendation adopted in relevant part*, No. 22-cv-12039, 2024 WL 1342668 (E.D. Mich. Mar. 29, 2024), cuts the other way. *Family First*, however, addressed a motion to dismiss and concluded that Dobronski plausibly pleaded awareness by the principal of the agent's actions. *Id.* at \*11–12. The Court faces a motion for summary judgment, and Dobronski entered no evidence to support his speculation. Dobronski's later filed supplemental authorities suffer the same infirmity. *See* ECF 46, 47.

[6] Further, Dobronski failed to explain how Defendant Pham, as an employee of Selectquote, could be Amigos BPO's principal.

telephone subscriber who placed his phone number on the national do-not-call registry. 47 C.F.R. § 64.1200(c)(2). But if a telephone subscriber gives his express consent to receive the call, the caller does not face liability under either theory. 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(f)(15). Michigan law also provides a consent defense. *See* Mich. Comp. Laws §§ 484.125(2)(a)(i), 445.111(m)(i); *Dobronski v. Transamerica Life Ins. Co.*, 347 Mich. App. 92, 110 (2023). So, if no genuine dispute exists as to whether Dobronski consented by filling out the lead form, judgment would be proper for Defendants.

But the evidence related to the lead form dooms Defendants' consent-based argument. First, Dobronski cited sufficient evidence in the record to dispute the fact that he filled out the lead form. He testified and declared that he never filled out the form. ECF 33-2, PgID 632; ECF 38-1, PgID 794–95. Second, the Journaya compliance report bolsters Dobronski's testimony in the following ways: (1) it suggests that neither the name Carlton Fisher nor the phone number were entered into the lead form, and more fundamentally (2) it appears to show that the lead form included no space to disclose a name. ECF 38-1, PgID 811. Further, while Selectquote is one of yourtopinsurance.com's marketing partners, *see* ECF 40-3, PgID 919, the Journaya report states that the lead form gave consent for calls from *myratechecker.com* and its partners. ECF 38-1, PgID 811. Defendants cited no evidence about whether Selectquote is a marketing partner of myratechecker.com. As a result, the Court cannot determine that Dobronski consented to calls from Selectquote.

At the motion hearing and for the first time, Defendants argued that the Journaya report is the erroneous result of "improper integration" with yourtopinsurance.com. Although Defendants point was not unmistakably clear, the Court understands their assertion to be that there was some technical issue that made the Journaya report an inaccurate representation of the relevant lead form. On that basis, Defendants argued that the Court should ignore that (1) the Journaya report itself shows that the form was hosted on yourtopinsurance.com but sought consent for myratechecker.com and its partners; (2) the Journaya report lacks a space for a user to enter a name; and (3) that neither the name nor the phone number match Journaya's records. But Defendants cited no evidence that directly supported their "improper integration argument." Instead, Defendants suggested that that the automated-email video, its related screenshot, and Amigos BPO's allegedly immutable internal database prove improper integration by implication.

At this stage of the litigation, the alleged automated email received by Amigos BPO—which includes the relevant phone number but does not show the name Carlton Fisher (at least not as presented on video)—the screenshot that is inconsistent with the video, *see ante* n.4, and Amigos BPO's allegedly immutable internal database cannot overcome Dobronski's testimony and the Journaya report. Defendants' argument is, at bottom, an attack on the credibility of the Journaya report. But it "is beyond dispute that, when confronted with a motion for summary judgment," the Court cannot made credibility determinations or weigh the evidence. *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996).

13

Dobronski raised a material dispute of fact as to whether he gave consent through the lead form, and Defendants did not carry their burden to show otherwise. The Court will not grant judgment for Defendants based on Dobronski's disputed consent from the lead form on any count.

### B. Consent During Call One to Receive Call Two

At the motion hearing, Defendants argued that Dobronski consented to Call Two during Call One. For purposes of their summary judgment motion, Defendants are incorrect.

Defendants initially included as "Exhibit 11" a recording that appeared to capture the portion of Call One with Amigos BPO—that is, before the call was transferred to Selectquote. *See* ECF 33-12. On the eve of the motion hearing, Defendants asked the Court to "replace" Exhibit 11 with a Corrected Exhibit 11, because the Original Exhibit 11 was "incorrect." ECF 42. Defendants clarified by email to the Court that Corrected Exhibit 11 "is intended to replace the originally filed Exhibit 11," and asked the court to "[p]lease disregard the original exhibit 11." Corrected Exhibit 11 appears to be a recording of at least some of Call One after it was transferred to Selectquote. *See* ECF 42. Dobronski objected to the late-filed Corrected Exhibit 11 and renewed his objections to the veracity of Original Exhibit 11. *See* ECF 43.

In response to the late-breaking evidence and Dobronski's objection, the Court will treat Exhibit 11 as withdrawn, and will not consider it as record evidence—either as recorded or transcribed—for purposes of Defendants' summary judgment motion

per Defendants' request. Given that Dobronski believes that Original Exhibit 11 is at best partially fabricated, and because it does not create a genuine dispute of material fact necessary for Dobronski to avoid summary judgment, withdrawal will not prejudice him.[7] To note, Defendants opening brief—which provided the backbone for the motion hearing—references the Original Exhibit 11 recording and a transcript of that recording from Dobronski's deposition. ECF 33, PgID 597.

The Court will not consider the content of Original Exhibit 11 either as recorded or transcribed in view of Dobronski's continued allegations that Original Exhibit 11 is fabricated, Defendants' unequivocal withdrawal of the exhibit, and Defendants' failure to cite the transcription for anything other than the uncontested fact that Dobronski identified himself on Call One as "Carlton Fisher." *See* ECF 33, PgID 597; Fed. R. Civ. P. 56(c)(1)(3). Even then, without a genuine recording, the record lacks the rare type of objective evidence that may dispel fact disputes. *See Coble v. City of White House*, 634 F.3d 865, 868 (6th Cir. 2011).

Second, the Court will not consider Corrected Exhibit 11. Defendants filed Corrected Exhibit 11 on the eve of a motion hearing months after they submitted

---

[7] In his response brief to the summary judgment motion, Dobronski asked the Court to order Amigos BPO to show cause and to exclude some evidence. ECF 38, PgID 764 But "a counter-motion must not be combined with a response or reply," E.D. Mich. L.R. 7.1(i), so the Court will not entertain those as part of the summary judgment motion. The Court will also deny Dobronski's motion to reopen discovery and thereby enforce a subpoena he sent to Amigos BPO. ECF 45. His request simply comes too late. Discovery closed months ago, and Dobronski offered no reason for his delay in seeking the relief he requests. *Smigelski v. Cluley*, 20-cv-4812, 2022 WL 3584354, at *2 (S.D. Ohio Aug. 22, 2022) (denying a motion to reopen when plaintiff delayed without justification). Although Dobronski is proceeding *pro se*, he is a very experienced litigator, and should have made his request earlier and in proper form.

their summary judgment motion, brief, and attached exhibits. *See* ECF 42. Although Defendants certified that they disclosed Corrected Exhibit 11 to Dobronski in discovery, ECF 44, PgID 945–46, prejudice is palpable from relying on late-breaking evidence in support of a motion made months prior.

And even if the Court considered Corrected Exhibit 11, Defendants' argument regarding consent on the phone calls would be unavailing. At no point during the portion of Call One captured in Corrected Exhibit 11 did Dobronski *expressly* consent to a call back or any future calls so unequivocally as to "utterly discredit" his story and take the question from the jury, *see Coble*, 634 F.3d at 868, so Call One does not evidence consent to Call Two. *See* ECF 42. It is thus immaterial whether the Court formally considers Corrected Exhibit 11.

IV.   <u>Single-Count Arguments</u>

   A.   *Count One—Violation of 47 U.S.C. § 227(b)(1)(A)(iii)*[8]

In addition to their now-rejected consent defense, Defendants argued that Defendant Pham did not use an "automatic telephone dialing system" as required for liability under 47 U.S.C. § 227(b)(1)(A)(iii). *See* ECF 33, PgID 606–07. "Automatic telephone dialing system" means "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number

---

[8] Defendants also argued that whether the telephone line was for business or residential use is relevant to Count One. ECF 33, PgID 610–11. But Count One invokes 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii), both of which prohibit certain calls to any number registered to a "cellular telephone service." Defendants failed to explain how the cell phone being for business or personal use is relevant to Count One. *See* Section IV.C.

generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The relevant inquiry, then, is whether Pham used a phone that had the "capacity to use a random or sequential number generator," not whether he *used* that capability. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021).

At summary judgment, a nonmoving plaintiff must bring to the Court's attention sufficient admissible evidence for a jury to find in their favor on each component of their proofs. *Anderson*, 477 U.S. at 249. So, to survive summary judgment, Dobronski must have produced evidence that Pham used a phone with automatic dialing capabilities to initiate Call Two. He did not.[9] In his briefing on this point, Dobronski offered as evidence only allegations from his complaint. ECF 38, PgID 780–81. But unadmitted allegations are not admissible evidence, *see Anderson*, 477 U.S. at 248, and the Court is unaware of any testimony supporting the allegations.[10]

Further, Dobronski's only support for the allegation that Pham used an automatic dialing system was that he heard a clicking noise on the call after a few

---

[9] At the motion hearing, Dobronski argued that Amigos BPO used an automatic telephone dialing system, and thus Selectquote must have used the same system. But he provided no *evidence* to support either the predicate fact or his proposed inference. He also cited a footnote from *Duguid*. As mentioned, however, that case offered a narrow reading of an autodialer; that is, an autodialer must have the capacity to generate random or sequential numbers. 592 U.S. at 409.

[10] Rule 56 places the burden on the parties to cite specific *evidence* in the record to support their arguments regarding the existence or nonexistence of material fact disputes. Fed. R. Civ. P. 56(c)(1)(A). After all, "judges are not like pigs, hunting for truffles buried in the record." *Murthy v. Missouri*, 144 S. Ct. 1972, 1991 n.7 (2024) (cleaned up).

seconds of silence and that the caller ID on the call was inaccurate.[11] ECF 38, PgID 780–81. Notably, Dobronski failed to make these allegations in his complaint. And even if Dobronski's unsupported assertions could serve as competent evidence, no reasonable jury could conclude on the basis of a click, delay, and incorrect caller ID that it is more likely than not that Pham used "equipment which has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Therefore, Defendants are entitled to complete judgment on Count One for both calls. *See ante* Part II (discussing liability for Call One).

### B. Count Two—47 C.F.R. § 64.1200(a)(7)(i)

Dobronski also alleged that Defendants violated 47 C.F.R. § 64.1200(a)(7)(i). ECF 2, PgID 40. The parties disputed whether § 64.1200(a)(7)(i) creates a cause of action, ECF 33, PgID 608; ECF 38, PgID 782, and the regulation is not wholly clear regarding the relationship between the text of § 64.1200(a)(7) and its subparts.[12] Nevertheless, at this juncture, it appears that Dobronski is correct.

Subsection 64.1200(a)(7) addresses callers who "abandon" their calls—that is, fail to connect the call "to a live sales representative within two (2) seconds of the

---

[11] Dobronski asserted in his brief (again without record support) that this evidence is suggestive of the use of an automatic telephone dialing system. ECF 38, PgID 780. Such technical knowledge of issues beyond the jury's ken is the province of an expert witness, *see* Fed. R. Evid. 701, and Dobronski did not disclose or identify himself as an expert witness. ECF 33-2, PgID 628.

[12] Defendants made no arguments related to the merits of the count—that is, they did not argue that even if § 64.1200(a)(7)(i) creates a cause of action, Dobronski's allegations or evidence are insufficient.

called person's completed greeting." First, it is a violation for callers to "[a]bandon more than three percent of all telemarketing calls that are answered by a live person, as measured over a 30-day period for a single calling campaign." § 64.1200(a)(7). Second, "[w]henever [the call is 'abandoned'] . . . the telemarketer or the seller must provide" one of two opt-out mechanisms—either a "prerecorded identification and opt-out message" or an "automated, interactive voice- and/or key press-activated opt-out mechanism" as detailed in § 64.1200(a)(7)(i)(A)–(B). Dobronski argued that means the caller *must* provide one of the opt-out mechanisms on every otherwise-abandoned call to avoid violating the TCPA.

Defendants argued that there is no claim under § 64.1200(a)(7)(i)(A)–(B) unless the plaintiff shows first that Defendants abandoned more than three percent of their calls. Defendants' entire argument on that point consisted of one citation to *Dobronski v. Family First Life, LLC*. ECF 33, PgID 608. There, the judge concluded that the (A)–(B) opt-out mechanisms are "exceptions" for any given call that become relevant only after a plaintiff shows a violation of 64.1200(a)(7)—that is, a plaintiff could not recover when the caller failed to provide an (A)–(B) opt-out mechanism unless he also showed that the caller abandoned three percent of its calls. 2024 WL 575858, at *16; *see also Dahdah v. Rocket Mortg., LLC*, No. 22-11863, 2023 WL 5941730, at *5 (E.D. Mich. Sept. 12, 2023), *opinion vacated on reconsideration of other grounds*, No. 22-11863, 2023 WL 11944898 (E.D. Mich. Nov. 17, 2023).

Another judge in this district recently rejected the same argument when the defendant there relied solely on *Family First Life*, after the judge observed that the

argument was "relatively cursory," and "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Dobronski v. Baid*, No. 24-10297, 2024 WL 3997059, at *4 (E.D. Mich. Aug. 29, 2024) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). The judge also noted that *Family First Life* "conducted little analysis of the issue" and cited cases that did not stand for the proposition that no private right of action existed. *Id.* The same rationale applies here and that alone is sufficient to deny judgment.

Moreover, subsection 64.1200(a)(7) appears to tackle abandoned calls in two ways. By its own terms it requires that *all* abandoned telemarketing calls use an opt-out mechanism—"[w]henever a live sales representative is not available to speak with the person answering the call, within two (2) seconds after the called person's completed greeting, the telemarketer or the seller *must* provide [an opt-out]." § 64.1200(a)(7)(i). And then, even if the caller has an opt-out mechanism, it cannot rely on it too much—that is, it cannot "[a]bandon more than three percent of all telemarketing calls" in a single campaign. § 64.1200(a)(7).

The regulation does not state that it becomes necessary to use an opt-out mechanism only after a caller has abandoned three percent of calls, or that an answerer cannot sue when a caller fails to comply with the three-percent rule in calls to others. Defendants' authorities (not all of which are apposite, as noted in *Baid*), do not explain from where in the text their limitation is derived. *See Family First Life*, 2024 WL 575858, at *16; *Dahdah v. Rocket Mortg., LLC*, No. 22-11863, 2023 WL

20

5941730, at *5 (E.D. Mich. Sept. 12, 2023) (asserting without citation that a plaintiff can recover under § 64.1200(a)(7)(i) only after showing a calculation for the three-percent bar); *Leyse v. Bank of Am., Nat'l Ass'n*, No. CV 11-7128, 2020 WL 1227410, at *7 (D.N.J. Mar. 13, 2020) (focusing on whether one call was a violation without reference to the three-percent calculation). Absent more, the Court cannot conclude that Dobronski cannot sue to enforce a failure to use an opt-out mechanism on an abandoned call.

As discussed above, the Court will enter judgment for Defendants on Count Two for Call One, but the Court will not enter judgment for Defendants on Count Two for Call Two.

### C. Count Three—47 C.F.R. § 64.1200(c)(2)

The federal government maintains a "national do-not-call registry of persons who do not wish to receive telephone solicitations." 47 C.F.R. § 64.1200(c)(2). It is a violation of the TCPA to call a number that was properly added to the registry absent the registrar's express consent. *See id.* § 64.1200(c)(2) (prohibiting "telephone solicitations"), (f)(15)(i) (excluding from "telephone solicitation" calls to a "person with that person's prior express invitation or permission"). The registry is available only for "residential telephone subscriber[s]," *see id.* § 64.1200(c)(2), so subscribers who use their phones wholly for business generally cannot place their numbers on the registry. *See Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223–25 (9th Cir. 2022).

Defendants argued that the phone line at issue here, although placed on the registry, was a business line and thus not subject to the registry's protection.[13] ECF 33, PgID 610–11. But a genuine dispute of material fact as to the phone line's usage precludes summary judgment for Defendants on that theory.

Regulations promulgated by the FCC provide definitions for "subscriber," "business subscriber," and "residential subscriber." 47 C.F.R. § 64.1100; *id.* § 64.2035. 47 C.F.R. § 64.1100 defines "subscriber" as:

> (1) The party identified in the account records of a common carrier as responsible for payment of the telephone bill;
> (2) Any adult person authorized by such party to change telecommunications services or to charge services to the account; or
> (3) Any person contractually or otherwise lawfully authorized to represent such party.

But 47 C.F.R. § 64.2305 notes that "[b]usiness subscriber refers to a subscriber to telephone exchange service for businesses" and that "[r]esidential subscriber refers to a subscriber to telephone exchange service that is not a business subscriber." [14]

Subpart (1) of 47 C.F.R. § 64.1100 might suggest that the official account holder of the line determines its character, and the line is undoubtedly registered to Dobronski's business. But courts generally are not so formulaic. Instead, they often

---

[13] Defendants also argued that Dobronski consented to the calls. As discussed in Part III, the Court cannot conclude at this time that he did.

[14] 47 C.F.R. § 64.2305 applies directly only to its subpart—Subpart X. The TCPA-related regulations at issue here are found in Subpart L—Restrictions on Telemarketing, Telephone Solicitation, and Facsimile Advertising. Absent a definition in Subpart L, however, the canon of consistent usage suggests borrowing Subpart X's definition. *Cf. Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932) ("[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning.").

use a fact-intensive approach looking to a variety of factors including not just to whom the phone is registered, but also at how it is used, how it is presented to the public, who pays the bills, and so on. *See Chennette*, 50 F.4th at 1225 (collecting cases). And if subscribers list their numbers on the registry, the FCC suggested that courts should presume they are residential subscribers. *Id.* After all, a user might prefer to register a personal line through a business account or vice versa for a number of different reasons. At bottom, the determination largely depends on whether the subscriber—business or individual—subscribed for business use, residential/personal use, or both.

Defendants focused almost entirely on whether Dobronski represented the number as a business number, but their only evidence is that the line was registered to Dobronski's business, ECF 33, PgID 610–11, where Dobronski's daughter works. ECF 38-1, PgID 818. Unlike the plaintiff in Defendants' leading case who "made no representation that he uses the (718) area code number for anything other than" business, *see Barton v. LeadPoint, Inc.*, No. 22-35130, 2023 WL 4646103, at *1 (9th Cir. July 20, 2023), Dobronski and his daughter averred that the phone was used entirely for personal matters and that her work for Teletech does not involve cell phone usage. ECF 33-2, PgID 641–42, 660; ECF 38-1, at PgID 818–19. Many courts have concluded that mixed-use phones are not excluded from the registry. *Chennette*, 50 F.4th at 1224–25 (collecting cases). Defendants provided no evidence that the number was, to use authority they cited as an example, listed in professional correspondence, entered in a business directory, or placed on a business card. *See*

23

*Bank v. Indep. Energy Grp. LLC*, No. 12-CV-1369, 2015 WL 4488070, at *1 (E.D.N.Y. July 23, 2015).

Taking all reasonable inferences in favor of Dobronski, it appears that he procured a phone line for his daughter's personal use and routed it through a business account that he receives from the telephone company for free. ECF 33-2, PgID 641–42. Because a jury could conclude that the line at issue here qualifies as "residential," the line can be on the do-not-call registry.

As discussed above, the Court will enter judgment for Defendants on Count Three for Call One, but the Court will not enter judgment for Defendants on Count Three for Call Two.

### D.  Count IV—47 C.F.R. § 64.1200(d)(1)

47 C.F.R. § 64.1200(d) requires that telemarketers create procedures to maintain a list of persons who request not to receive calls. The procedures must include a "written policy, available upon demand, for maintaining a do-not-call list." 47 C.F.R. § 64.1200(d)(1). And because the Sixth Circuit instructed that § 64.1200(d) implements 47 U.S.C. § 227(c), a private cause of action exists to enforce § 64.1200(d). *See Charvat v. NMP, LLC*, 656 F.3d 440, 448 (6th Cir. 2011); *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 791 (E.D. Mich. 2020) (concluding same).

Here, Dobronski alleged and testified at his deposition that he requested Selectquote's written policy on Call Two but never received it. ECF 38, PgID 782. Defendants argued that failure to provide the policy on demand is not a violation.

24

Rather than developing that argument, Defendants only cited three cases. ECF 33, PgID 609.

The plain text of the regulation requires that callers have a policy that is (1) written and (2) available on demand. 47 C.F.R. § 64.1200(d)(1). Here, Dobronski argued that Selectquote did not have a policy available to him on demand because it never provided him with the written policy after he asked for it. ECF 38, PgID 782. Based on the argument, a jury could conclude that, even if Selectquote had a written policy, it was not "available upon demand" at the time of the call. *See Dobronski v. Baid*, No. 24-10297, 2024 WL 3997059, at *3 (E.D. Mich. Aug. 29, 2024); *Hamilton v. Voxeo Corp.*, No. 07-cv-404, 2009 WL 1868542, at *4 (S.D. Ohio June 25, 2009) ("[T]he fact [that the telemarketer] . . . refused to provide him a copy would be some proof that . . . it did not have a written policy available on demand."). Selectquote's uncontested failure to provide the policy gives rise to a reasonable inference that it did not have a policy available upon demand. And the deficiency violates § 64.1200(d).

Finally, the opinions Defendants cited are either distinguishable or fail to take into account that a policy is nonconforming if it is not available "upon demand." *See Family First Life*, 2024 WL 575858, at *18–19 (discussing the issue without analyzing whether the policy was "available upon demand"); *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 138 (D. Conn. 2016) ("Simmons also fails to offer any evidence that the [do not call] policy is not available on demand."); *Hamilton*, 2009 WL 1868542, at *4.

The Court will deny summary judgment on Count IV.

E.  *Count V—47 C.F.R. § 64.1601(e)*

47 C.F.R. § 64.1601(e) requires that telemarketers transmit caller identification to call recipients. Dobronski alleged and testified that the caller identification for Call Two was "spoofed," meaning that it was deliberately false to disguise Selectquote's identity. ECF 2, PgID 33, 37; ECF 33-2, PgID 652. The parties disagreed as to whether there is a private cause of action to enforce violations of § 64.1601(e). ECF 33, PgID 609; ECF 38, PgID 783. There is not.

The TCPA is split into many subsections, but only two provide private rights of action. The first applies only to regulations promulgated to enforce § 227(b), and the second applies only to regulations promulgated to enforce § 227(c). 47 U.S.C. § 227(b)(3), (c)(5). The statute thus strongly suggests that there is no private right of action to enforce other subsections of the Act. *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 108–09 (2011) (discussing the interplay between *expressio/inclusio unias* and the canon against implied rights of action). To determine if a plaintiff can sue to enforce a regulatory requirement related to the TCPA, Courts must slot the relevant regulation into the correct part of the statute.

The FCC often elects not to identify under which statutory subsection it promulgates TCPA-related rules. *See generally* 47 C.F.R. § 64.1200. That makes putting regulations into the right bucket for purposes of the private rights of action challenging. Here, however, there is an easy answer. 47 C.F.R. § 1601(e) is about caller identification information. Neither § 227(b) nor (c) mention caller identification information, and caller identification information does not fit cleanly into either

automated telephone equipment (§ 227(b)'s focus) or subscriber privacy rights (§ 227(c)'s focus).

Even if caller identification information touches on those topics, there is a section that directly tackles caller identification information—§ 227(e), which is titled "Prohibition on provision of misleading or inaccurate caller identification information." There is no private right of action to enforce violations of 47 U.S.C. § 227(e), and 47 C.F.R. § 1601(e) appears to buttress § 227(e). So, the Court concludes that there is no private right of action to enforce violations of § 1601(e). Dobronski cited no compelling authority to the contrary, and the Court is aware of many cases that support its conclusion. *See Dobronski v. Total Ins. Brokers, LLC,* No. 21-cv-10035, 2021 WL 4452218, at *2–3. (E.D. Mich. Sept. 29, 2021); *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 790 (E.D. Mich. 2020); *Dobronski v. SunPath Ltd.*, No. 19-cv-12798, 2020 WL 8840311, at *6 (E.D. Mich. July 27, 2020).

Dobronski asked the Court to refer the question, under the doctrine of primary jurisdiction, to the FCC so that the FCC may clarify on which subsection it relied. ECF 38, PgID 785. But, the doctrine of primary jurisdiction is inappropriate here, since "the existence of a private right of action to enforce this regulation is a question of legislative intent and statutory construction of words that have ordinary meaning and are not technical in any sense." *Total Ins. Brokers*, 2021 WL 4452218, at *3. The Court does not require the assistance of the FCC in interpreting the statute's language.

The Court will enter judgment for Defendants on Count V.

27

F.  *Count VI—Michigan Telephone Companies as Common Carriers Act*

Dobronski also alleged violations of the MTCCCA, Michigan Compiled Laws § 484.125(2)(a) and .125(2)(b). To violate § 484.125(2)(a), a caller must "[d]eliver a recorded message." Dobronski concedes that neither call opened with a recorded message and that his inclusion of § 484.125(2)(a) in his complaint was inadvertent. ECF 38, PgID 788. The Court will enter judgment for Defendants on § 484.125(2)(a) liability.

To violate § 484.125(2)(b), the call must occur "intrastate"—that is, "originating and delivering within" Michigan.[15] Defendants submitted direct evidence that Call Two originated from California. ECF 33-7, PgID 695. That evidence aligns with Pham's statement on Call Two that he was calling from California. ECF 33-13, at 00:32–00:36. Dobronski attempted to create a fact dispute by noting that Call Two used a Michigan area code. ECF 38, PgID 789. A phone number's area code, however, does not demonstrate from where the line holder makes calls. Given a cell phone's mobility, a reasonable jury could not determine from a cell phone number's area code alone that it was more likely than not that the call originated from a particular location.

---

[15] Despite representations to the contrary, Defendants failed to cite evidence in the record showing that Call One originated from Ohio. The declarations from Omer Yusuf of Amigos and Defendant Pham do not mention Ohio. ECF 33-4, PgID 671–76; ECF 33-7, PgID 695–97. Regardless, Defendants are not vicariously liable for Call One, as discussed earlier, so Call One cannot support a MTCCCA claim against them. *See* Mich. Comp. Laws § 484.125(1)(a) (defining "caller").

Dobronski failed to point to sufficient evidence creating a genuine dispute of material fact about the out-of-state origination of Call Two, so the Court will grant complete judgment for Defendants on Count VI.

### G. Count VII—Michigan Home Solicitation Sales Act

The Michigan Home Solicitation Sales Act, Mich. Comp. Laws § 445.111a(5), mirrors the TCPA. Defendants' only asserted defense to Count VII is Dobronski's consent to receive Call Two. As discussed above, the Court will enter judgment for Defendants on Count Seven for Call One, but the Court will not enter judgment for Defendants on Count Seven for Call Two.

### V.   The Parties' Requests for Rule 11 Sanctions

Both parties requested sanctions pursuant to Federal Rule of Civil Procedure 11, ECF 33, PgID 612; ECF 38, PgID 789–90, but their requests are procedurally improper. Rule 11 unequivocally states that "[a] motion for sanctions must be made separately from any other motion." Eastern District of Michigan Local Rule 7.1(i) also prohibits parties from combining different types of requested relief into a single motion.

The parties are warned that the Court takes a dim view of unsubstantiated allegations of impropriety and allegations of manufactured evidence. If the parties have legitimate concerns about the others' professional conduct, the proper avenue to address them is in a standalone motion, so that the Court can address the allegations with the level of seriousness that they deserve.

29

VI.   <u>Conclusion</u>

Because genuine disputes of material facts exist, as discussed above, complete summary judgment is not appropriate for the Defendants. Instead, the Court will grant summary judgment in favor of Defendants for all alleged liability arising out of Call One and on Counts One, Five, and Six.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' Motion for Judgment on the Pleadings or Summary Judgment [33] is **GRANTED IN PART and DENIED IN PART** in accordance with the analysis set forth above. Thus, summary judgment on:

(A) Count One is **GRANTED**.

(B) Count Two is **GRANTED IN PART and DENIED IN PART**.

(C) Count Three is **GRANTED IN PART and DENIED IN PART**.

(D) Count Four is **DENIED**.

(E) Count Five is **GRANTED**.

(F) Count Six is **GRANTED**.

(G) Count Seven is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that the parties' requests for sanctions are **DENIED.**

**IT IS FURTHER ORDERED** that Dobronski's ex parte Motion to Exceed Page Limits [37] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Excess Pages [39] is **GRANTED**.[16]

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Reopen Limited Discovery [45] is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: January 14, 2025

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 14, 2025, by electronic and/or ordinary mail.

s/ R. Loury
Case Manager

---

[16] Defendants filed an overlength reply. *See* ECF 40. And the Court understands their motion as a request for the Court to fully consider that brief, rather than as a request to file another, even longer reply brief.

31