UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK DOBRONSKI,

        Plaintiff,

v.

SELECTQUOTE INSURANCE
SERVICES and TUAN ENGLAND
PHAM,

        Defendants.

Case No. 2:23-cv-12597

HONORABLE STEPHEN J. MURPHY, III

_____/

**ORDER GRANTING
MOTION FOR RECONSIDERATION [57]**

Plaintiff Mark Dobronski moved for partial reconsideration of the Court's January 14, 2025 order. ECF 57. Dobronski's motion accurately pointed out a mistake of law in the Court's order. Fed. R. Civ. P. 60(b)(1); E.D. Mich. L.R. 7.1(h)(2)(A). The Court wrongly suggested, as part of its reasoning to reach the conclusion that 47 C.F.R. § 64.1601(e) cannot be privately enforced, that the regulation was promulgated to enforce 47 U.S.C. § 227(e). ECF 55, PgID 1201–02. Upon review of the persuasive authority from within and without this district as well as the statutory and regulatory scheme, the Court concludes that the minority view—*i.e.*, that 47 U.S.C. § 227(c)(5)(B) provides a private right of action for violations of 47 C.F.R. § 64.1601(e)—is correct.[1]

---

[1] Based on the parties' briefing, the issues are clear. Accordingly, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2); Practice Guidelines for Judge Stephen J. Murphy, III.

1

## BACKGROUND

Mark Dobronski, proceeding pro se,[2] sued Selectquote Insurance Services and its employee Tuan England Pham for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227; the Michigan Telephone Companies as Common Carriers Act; and the Michigan Home Solicitation Sales Act. *See generally* ECF 1. Defendants moved for summary judgment, which the Court granted in part and denied in part. ECF 55. Relevant to Dobronski's reconsideration motion, the Court concluded that the TCPA did not create a private right of action for violations of 47 C.F.R. § 64.1601(e) and granted summary judgment for Defendants on Count V.

Dobronski moved for partial reconsideration and focused entirely on the Court's rationale regarding Count V. ECF 57. The Court concluded that it had likely erred, *see* ECF 59, PgID 1236, and authorized Defendants to respond to defend the lack of a private right of action. *See* ECF 59; E.D. Mich. L.R. 7.1(h)(3). Defendants did so. ECF 60.

## DISCUSSION

The question re-presented here is whether the caller ID requirement of 47 C.F.R. § 64.1601(e) can be enforced through one of the TCPA's two private rights of action—§ 227(b)(3) or (c)(5). The dominant view among the cited authority is that § 64.1601(e) cannot be enforced privately because it was promulgated to support

---

[2] Although Dobronski proceeds pro se, the Court is aware that he is or was an attorney, once served as a state judge, and has extensive experience with TCPA cases. ECF 33-2, PgID 624. Courts generally give less solicitude, if any, to attorneys proceeding pro se. *See Chevron Corp. v. Donziger*, 990 F.3d 191, 203 (2d Cir. 2021).

§ 227(d), so the Court's error may not have warranted reinstatement of Count V. Nonetheless, Dobronski developed a forceful argument against the majority view. Defendants responded and asserted both that the Court was correct to slot § 64.1601(e) into § 227(e) but also that the weight of persuasive authority supported the Court's conclusion, if not the path it took to reach it. Defendants also raised two alternative bases for dismissal of Count V that they did not include in their motion for summary judgment.

The Court will address each point in turn.

I. <u>Private Right of Action to Enforce 47 C.F.R. § 64.1601(e)</u>

First, Defendants did not provide a fulsome explanation of how § 64.1601(e) could have been promulgated to enforce § 227(e) when § 64.1601(e) predated § 227(e). Instead, Defendants largely turned to the "abundance of case law" supporting a *different* conclusion—*i.e.*, that § 64.1601(e) was either promulgated under § 227(d) or at least was not promulgated under § 227(b) or (c). The Court will first approach the question as it would on an issue of first impression, before turning to Defendants' authorities.

A. *Promulgation Authority for § 64.1601(e)*

Section 64.1601(e) must have been promulgated under *some* part of the TCPA. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress."). Only a handful of subsections of the TCPA allow for the promulgation of regulations:

3

- § 227(b)(2) authorizes the FCC to implement requirements that relate to the use of automatic telephone dialing systems
- § 227(c) authorizes the FCC to promulgate rules relating to the "need to protect residential telephone subscribers' privacy rights"
- § 227(d)(1)–(3) allow regulations technical and procedural standards related to fax machines, automatic telephone dialing systems, and "systems that are used to transmit any artificial or prerecorded voice message"
- § 227(e)(3) provides for regulations relating to misleading or inaccurate caller ID
- § 227(i) allows for the FCC to promulgate regulations to streamline information sharing with the FCC related to violations

As Dobronski correctly pointed out, § 227(e)(3) is quickly eliminated as the statutory basis for the promulgation of § 64.1601(e) because the TCPA was amended to include § 227(e) only *years after* the FCC promulgated § 64.1601(e).[3] Truth in Caller ID Act of 2009, Pub. L. No. 111-331, 124 Stat. 3572. The FCC could not have promulgated a regulation pursuant to authority that it did not yet have. *See Bowen*, 488 U.S. at 208.

Both subsections of § 227(d) as well as § 227(b)(2) suffer from a similar defect— want of legislative authorization sufficient to support § 64.1601(e). Section § 64.1601(e) imposes a caller ID requirement on *all* telemarketing calls. But

---

[3] Section 227(i) was also enacted *after* § 64.1601(e)'s promulgation. Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105, 133 Stat. 3274 (2019).

4

subsection § 227(b)(2) focuses only on calls made using automatic telephone dialing systems. Section 227(d)(1) relates only to fax machines and automatic telephone dialing systems, (d)(2) relates only to fax machines, and (d)(3) applies only to artificial and prerecorded voice messages. It is thus unclear from where in those subsections the FCC gained authority to create a blanket requirement applying to all calls, including those that do not relate to automatic dialing, fax machines, or artificial or prerecorded messages. *See Worsham v. LifeStation, Inc.*, No. 661, 2021 WL 5358876, at *17 (Md. Ct. Spec. App. Nov. 17, 2021).

The last remaining option—and the only subsection with the breadth of scope to cover § 64.1601(e)—is § 227(c). Subsection 227(c) required the FCC to "compare and evaluate alternative methods and procedures (including the use of electronic databases, telephone network technologies[)] . . . for their effectiveness in protecting such privacy rights." Then the FCC had to "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." Afterward, the FCC would promulgate regulations to support consumer privacy rights. Intuitively, a caller ID requirement seems to use a telephone network technology to help protect privacy rights. And § 227(c) is the only possible source for § 64.1601(e).

Although not necessary to the Court's conclusion, the regulatory history further buttresses its view. In an early rulemaking proceeding under the TCPA, the FCC noted that the TCPA directed it to consider a "number of alternatives for residential telephone subscribers to avoid receiving unwanted telephone solicitations

5

. . . includ[ing] a national database, network technologies, special directory markings, time of day restrictions, and industry-based or company-specific do-not-call lists." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8758 (1992). There can be little doubt that that direction came from § 227(c). *See* 47 U.S.C. § 227(c)(1)(A) (directing the FCC to "compare and evaluate alternative methods and procedures [including the use of electronic databases, telephone network technologies, special directory markings, industry-based or company-specific "do not call" systems, and any other alternative]"). Then, in evaluating those alternatives, the FCC identified the lack of widespread caller ID as a barrier to cost-effective network technology implementation. *In the Matter of Rules*, 7 F.C.C. Rcd. at 8761.

In 2003, the FCC referred back to the discussion from above, and then it: expressly sought comment on whether "network technologies have been developed over the last decade," specifically asked "whether to require telemarketers to transmit the name and telephone number of the calling party," assessed caller ID's effectiveness and efficiency in supporting consumer privacy rights, and "determined to require all sellers and telemarketers to transmit caller ID information." *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14118–21 (2003). It elsewhere concluded that "Caller ID requirements will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers." *Id.* at 14068. The agency record thus suggests that caller ID requirements are a telephone network technology or other alternative that the FCC

6

required in an attempt to help consumers enforce their privacy rights against telemarketers. That places § 64.1601(e) in the heartland of § 227(c), and thus supports the conclusion that the former was prescribed under the latter and benefits from § 227(c)(5)'s private right of action.

### B. The Majority Approach

Others have reached a different conclusion. Apart from one state court opinion, *see LifeStation, Inc.*, 2021 WL 5358876, at *17, every case presented by the parties has concluded that § 64.1601(e) lacks a private right of action. As shown below, a number of those cases arose in the Eastern District of Michigan. But although Defendants would have the Court take the many cases that support its view as having reached the no-right-of-action conclusion independently, they did not. As one of those cases observed, they all largely rely on the analysis from *Worsham v. Travel Options, Inc.*, No. 14-2749, 2016 WL 4592373 (D. Md. Sept. 2, 2016). *See Dobronski v. Fam. First Life, LLC*, No. 2:22-CV-12039, 2024 WL 575858 (E.D. Mich. Jan. 19, 2024), *report and recommendation adopted in part, rejected in part*, No. 22-CV-12039, 2024 WL 1342668 (E.D. Mich. Mar. 29, 2024). The undersigned, however, does not find *Travel Options* sufficiently persuasive to adopt it wholesale.

In *Travel Options*, the court determined that § 64.1601(e) was promulgated to enforce § 227(d), which lacks a private right of action, because § 64.1601(e)'s caller ID requirement resembles "technical and procedural standards." 2016 WL 4592373, at *3. In doing so, the court noted that the outcome was "not clear." *Id.* at *4. To be sure, § 227(d) is titled "Technical and Procedural Standards," and it is not unreasonable to

7

think that caller ID is "technical" or "procedural." But slotting § 64.1601(e) into § 227(d) on that basis is a little odd, given that § 64.1601(e) focuses on caller ID requirements for *all telemarketing calls*, and § 227(d) by its own terms governs only fax machines, automatic telephone dialing systems, and artificial or prerecorded voice systems. As the Maryland Court of Special Appeals observed, it is not clear that § 227(d) gave the FCC the authority to promulgate § 64.1601(e). *LifeStation, Inc.*, at *17.

By contrast, § 227(c) focuses on privacy rights generally and also spoke in terms of "methods and *procedures*" as well as "telephone network *technologies*" as mechanisms to protect subscriber privacy rights. 47 U.S.C. § 227(c) (emphasis added). Although § 227(c)'s focus is not an ineluctable fit, it is a better fit than § 227(d)'s because § 64.1601(e) goes beyond § 227(d)'s scope, but not §227(c)'s.

The court in *Travel Options* found relevant that § 227(c) does not require technology like caller ID to accomplish its purpose. 2016 WL 4592373, at *4 ("Caller ID technology does not fit neatly into the focus of either subsection [§ 227(b) and (c)], neither of which requires the use of such technology to accomplish their respective purposes."). Instead, *Travel Options* observed that caller ID merely "supports" consumers' enforcement actions under § 227(c). *Id.* ("[T]he FCC's rule in § 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection *c*, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim.").

8

But it does not follow that the FCC could not promulgate technology-focused rules (like a caller-ID requirement) under § 227(c)'s "telephone network technologies" language merely because it could also protect subscriber privacy rights in other, non-technological ways. *See* § 227(c)(2) (authorizing all rules that "implement methods and procedures for protecting . . . privacy rights"). And it is not intuitive why the fact that a rule directly supports § 227(c)'s goals by employing a network technology and "will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers," *see In Re Rules & Reguls.*, 18 F.C.C. Rcd. at 14118–21, bolsters the notion that § 64.1601(e) was not promulgated under the statute's subsection focused on protecting privacy rights. The Court sees no textual basis to carve from regulations that "protect" privacy rights those that merely "support" consumers' ability to enforce their rights—*i.e.*, privacy rights are protected in part because wrongdoers are prohibited from hiding behind anonymity. At bottom, subsection 227(c) lets the FCC make rules to protect privacy rights and lets consumers sue when telemarketers violate those rules; § 64.1601(e) is a rule that helps protect privacy rights. *Travel Options*'s influential inference seems to run uphill.

*Travel Options* also pondered whether the FCC was merely trying to align itself with the FTC by adding a caller ID requirement. 2016 WL 4592373, at *5. Maybe it was, *see In Re Rules & Reguls.*, 18 F.C.C. Rcd. at 14120–21, but it is not clear how that informs which subsection of § 227 provided the FCC's authority to do the aligning and whether Congress affixed a private right of action to that subsection.

9

The other cases add little because they largely rely on *Travel Options* or on each other. *See Dobronski v. Fam. First Life, LLC*, No. 22-cv12039, 2024 WL 575858, at *18–19 (E.D. Mich. Jan. 19, 2024), *report and recommendation adopted in part, rejected in part*, No. 22-cv-12039, 2024 WL 1342668 (E.D. Mich. Mar. 29, 2024) (recognizing that all authority relied on *Travel Options*); *Dobronski v. Tobias & Assocs.*, No. 23-cv-10331, 2023 WL 7005844, at *7–8 (E.D. Mich. Sept. 25, 2023) (resting on a recitation of prior authority), *report and recommendation adopted in part sub nom. Dobronski v. Tobias & Assocs., Inc.*, No. 23-10331, 2024 WL 1174553 (E.D. Mich. Mar. 18, 2024); *Dobronski v. Total Ins. Brokers, LLC*, No. 21-10035, 2021 WL 4452218, at *2–3 (E.D. Mich. Sept. 29, 2021) (relying on *Travel Options* and *SunPath*—a case that largely relied on *Travel Options*); *Dobronski v. SunPath Ltd.*, No. 19-13094, 2020 WL 8840311, at *6–7 (E.D. Mich. July 27, 2020) (relying on *Travel Options* and *Meyer v. Cap. All. Grp.*, No. 15-CV-2405, 2017 WL 5138316 (S.D. Cal. Nov. 6, 2017)); *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 789–90 (E.D. Mich. 2020) (relying on *Travel Options* and *Meyer*—a case that largely relied on *Travel Options*). Those cases provided little analysis beyond that performed in *Travel Options*.

Some of the cases that largely relied on *Travel Options* made one further argument: an appeal to the canon against implied rights of action. *See, e.g.*, *Meyer*, 2017 WL 5138316, at *16 ("Where a statutory scheme and its implementing regulations have expressly created a private right of action but have not expressly done so elsewhere in the same scheme, it is highly improbable that Congress—or

10

here, the FCC—absent mindedly forgot to mention an intended private action.");
*Dobronski v. Transamerica Life Ins. Co.*, 347 Mich. App. 92, 112 (2023). That canon is hearty but specific. Put simply, a "statute's mere prohibition of a certain act does not imply creation of a private right of action for its violation. The creation of such a right must be either express or clearly implied from the text of the statute." Antonin Scalia & Bryan A. Garner, *Reading Law* 313 (2012).

Courts have tried to map that principle onto this scenario. They note that § 64.1601(e), a regulatory subsection, lacks an express cause of action in its own text. *Meyer*, 2017 WL 5138316, at *16; *Transamerica Life Ins. Co.*, 347 Mich. App. at 112. They have then applied a finger on the scale against finding a private right of action for § 64.1601(e). *Meyer*, 2017 WL 5138316, at *17; *Transamerica Life Ins. Co.*, 347 Mich. App. at 113. They have done so not by refusing to imply a canon absent express *statutory* language but instead by resolving closeness in the question of which TCPA subsection § 64.1601(e) comes from against any subsection with a private right of action. *Meyer*, 2017 WL 5138316, at *17; *Transamerica Life Ins. Co.*, 347 Mich. App. at 113.

There is reason to doubt the aforementioned approach. First, regulations cannot create a private right of action on their own; the right of action must flow from a statute, *Parry v. Mohawk Motors of Mich., Inc*, 236 F.3d 299, 309 (6th Cir. 2000), so faulting the lack of an express cause of action in § 64.1601(e) is misplaced. Second, insofar as one could read the canon to require language that expressly links each regulatory requirement to a right-of-action-containing statutory section, the delivery

11

requirements and privacy restrictions of §§ 64.1200 and .1601 do not include any such language. And it is clear in this circuit that § 227(c) creates rights of action for violations of some parts of TCPA regulations despite their lack of express linking language. *See Charvat v. NMP, LLC*, 656 F.3d 440, 448 (6th Cir. 2011) (noting that § 64.1200(d), which does not mention § 227(c), was promulgated to implement § 227(c) and thus is privately enforceable).

The question here is not whether courts should *imply* or "create" a right of action for § 64.1601(e). It is instead whether, as a matter of textual interpretation, § 64.1601(e) falls within the scope of an *express* cause of action that Congress has already created. And none of the cited authorities provided support that the presumption against *implying* rights of action is relevant to determining the scope of an *express* right of action as it relates to promulgated regulations.

Because no other subsection of § 227 fits better than subsection (c), and because the Court is not persuaded by the majority of the persuasive authority, the Court concludes that 47 C.F.R. § 64.601(e) was promulgated to enforce 47 C.F.R. § 227(c). The private right of action in § 227(c)(5) is, therefore, available for violations of § 64.1601(e).

II.  Defendants' Alternative Arguments

Defendants raised two arguments for the first time in their response to the present motion. They noted first that even if § 227(c)(5) applies, Dobronski failed to plead or evidence one of its requirements—*i.e.*, that he received more than one call in a calendar year from Defendants. ECF 60, PgID 1247. They next noted that a

12

Freedom of Information Act request showed that, as of February 10, 2025, the subject telephone number was not on the national do-not-call list. *Id.* Both arguments are relevant to the elements that Dobronski must prove at trial. They are, however, inappropriately raised for the first time in response to a motion for reconsideration and should have been developed as alternative bases for judgment in the Defendants' dispositive motion.[4] *Cf. Banister v. Davis*, 590 U.S. 504, 516 (2020) ("And 'reconsideration' means just that: Courts will not entertain arguments that could have been but were not raised before the just-issued decision.").

**WHEREFORE**, it is hereby **ORDERED** that, upon reconsideration, Section IV.E of the Court's Omnibus Order [55] and its grant of judgment for Defendants on Count V are **VACATED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III<br>STEPHEN J. MURPHY, III<br>United States District Judge

Dated: February 28, 2025

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 28, 2025, by electronic and/or ordinary mail.

s/ R. Loury<br>Case Manager

---

[4] Dobronski specifically invoked § 227(c)(5) in his complaint. *See* ECF 2, PgID 20.

13